Walter C. COOK, Appellant,

v.

UNITED STATES, Appellee.

No. 5355.

District of Columbia Court of Appeals.

Argued Nov. 23, 1970.

Decided Jan. 12, 1971.

Thomas M. O'Malley, Washington D. C., appointed by this court, for appellant.

Barry W. Levine, Asst. U. S., Atty., with whom Thomas A. Flannery, U. S., Atty., John A. Terry and James F. Flanagan, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and KELLY and REILLY, Associate Judges.

REILLY, Associate Judge:

Pursuant to a search warrant, police officers entered an apartment and found appellant and other persons on the premises. They were arrested. Appellant, after trial by the court without a jury, was convicted of being knowingly present in an establish-

ment where narcotic drugs were sold, administered or dispensed without a license in violation of D.C.Code 1967, § 22–1515 (a):

> Whoever is found in the District in a gambling establishment * * * where intoxicating liquor is sold without a license or any narcotic drug is sold, administered, or dispensed without a license shall, if he knew that it was such an establishment and if he is unable to give a good account of his presence in the establishment, be imprisoned for not more than one year or fined not more than $500, or both.

He was also convicted of a violation of D.C.Code 1967, § 22–3601 (possession of narcotic paraphernalia) and has appealed both convictions.

According to two of the arresting officers, Rocco Cianciotti and Bryan Gaines, they entered an apartment house at 1839–13th Street N.W. at approximately 1:30 in the morning of April 2nd, possessed of a warrant issued by a magistrate a few hours before. As they approached Apartment 2–C—apparently on an upper floor—a man opened the door of that apartment. He had a bag in his hand which he dropped in a trash can. Before he could reenter, he was detained while the bag was examined and found to contain capsules, syringes, and a "stocking tourniquet". This man, Windel Smith, was placed under arrest.

The policemen then knocked on the door. Not receiving a response, they announced their presence and that they wished to enter to execute a warrant. The door remained closed.

After another knock, the officers forced the door open and entered, bringing Smith with them. They found the apartment occupied by appellant and two women, whose names appear in the notebook of Officer Cianciotti, as Regina Ward and Wanda Duncan,[1] with the tenant of the apartment, Nathaniel Preston Barns, making a hasty exit through a window to the roof of an adjoining structure. All four were arrested.

The apartment, described as a small room about 12 feet square, was furnished with a bed and dresser. The officers testified that when they came in appellant was standing in front of the dresser with his hand on a matchbox on top of the dresser. Other articles were scattered on the dresser top and these, along with the contents of the box, were placed in an envelope which in turn was signed (or initialled) by the two witnesses and Officer Snow, and ultimately delivered to the chief chemist of the narcotics bureau.

This envelope, introduced at the trial as a Government exhibit, contained the articles taken from the top of the dresser and from the matchbox. In addition to the box itself, these articles consisted of five syringes, three bottle top cookers, four capsules with traces of powder inside, and a white amphetamine tablet.

No attempt was made to separate the original contents of the matchbox from the other objects found on the dresser. A chemist from the bureau, Henry Penbloom, who had analyzed the contents of the exhibit, testified that one of the cookers and the capsules contained traces of heroin, and that the bag which Smith had tried to discard (received as another Government exhibit) held 67 gelatin capsules containing 3.3% heroin, and a spoon, strainer, and bottle top, disclosing smaller quantities of this drug.

Appellant then moved to suppress the evidence on the ground that requirements respecting the return of the search warrant had not been met, and that the forcible entry was improper. The court denied the motion. Appellant took the stand to ex-

1. Gaines, who apparently had not entered the names of the occupants in his notebook, could recall seeing only one woman in the room.

plain his presence in the apartment, testifying that he had come there at the request of Regina Ward to fetch some fried chicken from a nearby restaurant, and while he was discussing the details of the errand, the police broke in. He said that he had not seen any narcotics paraphernalia until then, at which time "the whole place flooded with white caps, implements, needles," and that when he was taken out " * * * the door and the hallway were flooded with capsules, and instruments and syringes."[2] At the conclusion of his testimony, the court without objection on the part of either counsel or appellant, inspected the latter's forearm and observed, "I think he has needle tracks on there. * * *" No challenge was made to the accuracy of this observation. The court found appelllant guilty on both charges, imposed sentences of 180 days, the terms to run concurrently.

In this court appellant urges that the conviction based on presence in an establishment where narcotics are "sold, administered, or dispensed" should be reversed in the absence of any testimony by the police witnesses that they actually had seen drugs being "sold, administered, or dispensed" in the apartment or that appellant had knowledge that the apartment was being used for such purposes.

As the testimony reveals that a sizable quantity of narcotics paraphernalia was in plain view on the top of the dresser by which appellant was standing, this argument is not persuasive. In rejecting a similar contention in a very recent case, Jones v. United States, D.C.App., 271 A.2d 559, (Decided December 7, 1970), this court said

2. The details of appellant's testimony conflicted with that of the police witness in four major respects. These need not be set forth here because on appeal, counsel conceded that the trial judge had grounds for disbelieving appellant's version of the matter.

3. In the instant case, appellant also takes exception to the trial judge's discovery of needle tracks on appellant's arm.

It is settled law that criminal intent on the part of the possessor of illicit drugs can be presumed from the presence of a large quantity of narcotics paraphernalia easily visible on the premises. Johnson v. United States, D.C.App., 255 A.2d 494 (1969). We think the same rationale applies to impart knowledge of the intended use to another individual present under the same circumstances. The amount of narcotics paraphernalia easily visible in the apartment plus the fresh needle tracks on Brown's arm[3] support the presumption that narcotic drugs were being administered and that the appellant had knowledge of the same. Leary v. United States, 395 U.S. 6, 36, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) (footnote added).

Appellant also argues that the convictions should be set aside because the evidence had been obtained by illegal search and seizure. But the search warrant discloses on its face (as does the supporting affidavit) that it encompassed "heroin, syringes, tourniquets, cookers and paraphernalia used in the preparation of heroin for retail * * *" (the very items placed in the envelopes introduced as Government Exhibits 1 and 2). Moreover, an officer in the Third District Vice Squad, in a supplemental affidavit, attributed his belief that such items were concealed on the premises to a visit he had made to the particular apartment two days previously when he was admitted by William (Sonny) Preston[4] and purchased ten gelatin capsules containing a white powder which Preston took from a plastic vial in a dresser drawer.

But as we have noted, counsel at the trial although expressly given an opportunity to object both to the procedure and the verbal finding, chose not to do so.

4. The transcript does not show whether the Preston referred to in the warrant was the same man identified in the transcript as the tenant of the apartment, Nathaniel Preston Barns.

Appellant argues that this transaction provided no grounds for believing that other narcotics paraphernalia were concealed in the apartment. In our opinion, it was more reasonable for affiant to harbor this belief than to infer that his purchase constituted the whole stock of such material in the apartment. As a search warrant can be issued on probable cause rather than absolute proof, the argument concerning the warrant is devoid of merit.[5] Accordingly we find no error in the conviction on the "presence in an establishment" count.

Appellant is on firmer footing in objecting to his conviction of a violation of D.C. Code 1967, § 22–3601

> No person shall have in his possession in the District any instrument, tool, or other implement for picking locks or pockets, or that is usually employed, or reasonably may be employed in the commission of any crime, if he is unable satisfactorily to account for the possession of the implement. * * *

■ Appellant points out that even though there is some testimony that appellant's hand was on a matchbox on top of the dresser first observed by the police witnesses, the failure of these officers to segregate the contents of the matchbox from the other paraphernalia on the dresser precludes an inference that he ever possessed the material subsequently identified as narcotic implements. The Government answers this contention by saying that not only the matchbox but the other articles on the dresser were in the "constructive" possession of appellant at the time of the raid.

Because appellant's conviction on the second count resulted only in the imposition of concurrent sentences, this issue would appear academic in view of our holding with respect to the other conviction. Under the doctrine of Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943), it had been the long standing practice of appellate courts, when multiple convictions in concurrent sentence cases were appealed, to disregard challenges to all the convictions if one was upheld. Were it not for Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), which placed limitations on this historic doctrine, we should deem it unnecessary to pass upon the issue of possession.

Accepting the guidelines drawn in this circuit for the application of *Benton,* however, we note that possession is an essential element of a violation of Section 22–3601.[6] As Barns, the tenant or lessee of the apartment was present at the time of the raid, the inference that appellant, rather than Barns or one of the other occupants on the scene possessed the incriminating implements, is strained. We therefore vacate the conviction of a violation of Section 22–3601, but having affirmed the conviction of a violation of Section 22–1515 (a) it is unnecessary to remand the case for purposes of resentencing.

Affirmed in part. Reversed in part.

---

5. Our knowledge of the contents of the warrant and supporting affidavits is based on xeroxed copies of these documents attached to appellee's brief, the authenticity of which was not challenged when counsel on both sides were heard in this court. The official record certified to this court, however, does not include these papers. The better practice on appeal when the validity of a warrant is in issue would be for counsel by motion to place such documents in the record.

6. United States v. Hooper, 139 U.S.App. D.C. 171, 432 F.2d 604, Decided March 6, 1970). *And see* United States v. Henderson, U.S.App.D.C. (No. 23,733, de-cided November 18, 1970). The Benton opinion permits appellate courts to apply the concurrent sentence doctrine as a matter of judicial convenience where there are no adverse collateral effects. The weight of authority in other circuits also favors the avoidance of analyzing complex issues which do not affect the total length of sentence. United States v. Bigham, 421 F.2d 1344, 1346 (5th Cir. 1969); United States ex rel. Weems v. Follette, 414 F.2d 417, 419 (2nd Cir. 1969); Kauffmann v. United States, 414 F.2d 1022, (8th Cir. 1969). In the instant case, while the collateral consequences may be remote, the issue is a simple one.