UNITED STATES of America,
Appellant,

v.

Gwendolyn E. JOHNSON.

No. 71–1715.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 7, 1972.

Decided Feb. 14, 1973.

As Amended May 11, 1973.

James A. Adams, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., at the time the brief was filed, John A. Terry and Brian W. Shaughnessy, Asst. U. S. Attys., were on the brief, for appellant.

Edwin C. Brown, Alexandria, Va., for appellee.

Before BAZELON, Chief Judge, and McGOWAN and TAMM, Circuit Judges.

McGOWAN, Circuit Judge:

The issue raised by the Government's appeal in this prosecution for federal narcotics offenses, 26 U.S.C. § 4704(a) and 21 U.S.C. § 174, is the correctness of the trial court's pretrial suppression

of evidence of narcotics found in appellee's purse. We hold that the order granting appellee's motion to suppress was in error; and we reverse.

## I

On or about January 5, 1971, members of the Narcotics Branch of the Metropolitan Police Department obtained a warrant authorizing a search for narcotics of the entire apartment of one James L. Stewart, subsequently indicted as a codefendant with appellee. The warrant was issued upon an affidavit which recited that within the preceding two weeks information had come to the police from a reliable informant that narcotics were being sold in Stewart's apartment, and that on January 5 an agent of the Department had purchased narcotics at that apartment. In the early morning of January 6, approximately seven members of the Department gained access to Stewart's apartment building and, leaving some of their party outside, proceeded to his apartment, knocked, and announced their identity and purpose. The officers waited nearly a minute, then heard a noise within the apartment followed by the sound of a window breaking, whereupon they forced the door open.

The first officers to gain entry observed Stewart apparently attempting to escape from the apartment through the bedroom window. He was apprehended, and, after the bedroom search revealed narcotics, was arrested. Other officers had entered the living room, where appellee was found sitting on the couch. A purse, which was on a coffee table in front of the couch, was immediately searched, yielding narcotics, and appellee was placed under arrest. Before entering Stewart's apartment, the police de-

tail had been advised that appellee was a visitor on the premises.

■ The District Court granted appellee's motion on the ground, as stated by it on the record, that the search of the purse preceded her formal arrest, and therefore could not be sustained as incident thereto. Since, in ruling on her motion, the trial judge assumed probable cause existed to arrest appellee prior to the search of her purse, we need not inquire into its existence even though the crime for which he believed she could be arrested is unclear.[1] Neither do we find it necessary to pursue the question of whether the formal placing under arrest of a criminal suspect is invariably a condition precedent to a lawful search incident to an arrest, although we note the trial judge's view is at variance with the decisions in this circuit.[2] What we do find is that, in the circumstances disclosed by this record, the search of appellee's purse was lawful as having been within the scope of the warrant to search the premises.

## II

■ The prohibition of the Fourth Amendment is against "unreasonable" searches and seizures. In determining whether under the circumstances of this case the search of appellee's purse violated that standard, the protection of individual privacy embodied in the Fourth Amendment must be weighed against the public interest in effective law enforcement with respect to narcotics violations. The specific question for resolution is whether the scope of the search warrant embraced an object in the apparent possession of a person not an occupant of the premises searched. Although the District Court did not expressly consider this issue, its suppres-

1. While the record is silent concerning the trial judge's thoughts on this matter, at oral argument appellant asserted that the crime thought to be involved was presence in an illegal establishment. 22 D.C.Code § 1515.

2. United States v. Brown, 150 U.S.App. D.C. 113, 463 F.2d 949 (1972). Where

circumstances constituted lawful detention amounting to arrest, we had earlier held that "[e]ven if the formal arrest was not made until after the search, the search will be upheld so long as there is probable cause for an arrest before the search is begun." Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305, 308 (1967).

sion of the evidence contained the implicit holding that appellee's purse fell without the warrant.

■ Turning first to the privacy element of the question, we note that the search was of a purse resting separately from the person of its owner. As such, it was not being "worn" by appellee and thus did not constitute an extension of her person so as to make the search one of her *person.* United States v. Teller, 397 F.2d 494 (7th Cir. 1968); United States v. Riccitelli, 259 F.Supp. 665 (D. Conn.1966). The invasion of appellee's privacy was therefore of a lesser degree than if she had been subjected to a search of her clothing or of objects being held by her.

■ On the Government's side of the balance lies both the information presented in the affidavit supporting the warrant, indicating that Stewart's apartment was a place where narcotics were sold as well as stored; and the delay, the suspicious noises that preceded the executing officers' entry into the apartment, and the apparent effort of Stewart to escape through the bedroom window, all suggesting attempts to thwart discovery of the illegal activity that the police suspected was being carried out on the premises. With emphasis on the limited nature of the circumstances presented, we hold that the

search of appellee's purse was consistent with the demands of the Fourth Amendment. Under these facts, the police could reasonably have believed that items sought and described in the warrant had been concealed in the purse,[3] and, notwithstanding appellee's status as a visitor on the premises, could have searched the purse in pursuit of items for which the warrant issued.[4]

■ In Walker v. United States, 117 U.S.App.D.C. 151, 327 F.2d 597, 600 (1963), cert. denied, 377 U.S. 956, 84 S. Ct. 1635, 12 L.Ed.2d 500 (1964), this court permitted the search of a wallet and bag held by one who shared occupancy of the residence searched under authority of a warrant, holding that a contrary result "would be to suggest that a warrant to search premises may be frustrated by the device of simply picking up the guilty object and holding it in one's hand." Similarly here, frustration of the warrant's purpose should not be permitted where the facts reveal that to be the likely result were the purse not searched. *See* Clay v. United States, 246 F.2d 298, 304 (5th Cir.), cert. denied, 355 U.S. 863, 78 S.Ct. 96, 2 L.Ed.2d 69 (1957); Nicks v. United States, 273 A.2d 256 (D.C.Ct.App.1971); and dictum in United States v. Festa, 192 F.Supp. 160, 163 (D.Mass.1960) (Wyzanski, J.); State v. Wise, 284 A.2d 292, 294 (Del.Sup.Ct.1971).[5]

3. It was also a reasonable belief that, in light of the affidavit, appellee might have been a customer who had purchased narcotics and placed them in her purse. The warrant was issued on allegations that the apartment was a place where narcotics were being sold; and the purposes of the warrant would seem to include the seizure of narcotics still on the premises but which had been sold there to a customer.

4. The ALI Model Code of Pre-Arraignment Procedure § 220.3(5) (Official Draft No. 1, 1972) states that the scope of a search warrant shall be only such as is "*reasonably necessary* to discover the things specified therein," (emphasis added). In this case the opening of appellee's purse was so necessary for the discovery of the narcotics which were the subject of the search warrant.

5. Our purposeful emphasis on the precise factual context of this case reflects our view that the narcotics located in the apartment (in purses or elsewhere)—and not appellee—was the central focus of the search authorized by the warrant. The facts shown by the warrant and affidavit as to the narcotics-retailing nature of the premises warranted the construction of the scope of the warrant placed upon it by the police. Indeed, our failure to uphold that construction would divert the vital law enforcement effort against narcotics traffic here involved to alternatives unwise from both a practical and legal standpoint. To obtain a warrant permitting the search of anyone found on the premises would, apart from being unnecessary in these circumstances, appear to be unsupportable as lacking the particularity constitutionally required, *see, e. g., Wise,*

Accordingly, we reverse the District Court's order of suppression, and remand the case for trial.

It is so ordered.

BAZELON, Chief Judge, concurring in part and dissenting in part:

I agree that this suppression order cannot be sustained on the record before us. I do not agree, however, that this record supports a holding that the evidence was admissible. I would instead hold that the search of Mrs. Johnson's purse was not authorized by the search warrant, and would remand for a determination whether the police had probable cause to arrest Mrs. Johnson when they initiated the search of her purse.

The majority says that "The specific question for resolution is whether the scope of the search warrant embraced an object in the apparent possession of a person not an occupant of the premises searched." Answering that question in the affirmative, the court rules the contents of the purse admissible and reverses the trial court.

In my view, the principle the majority applies would be applicable only if Mrs. Johnson had not been in apparent possession of her purse. But she was.

Moreover, the police arrested her for possession of the contraband immediately after discovering it and without verifying ownership of the purse. I think that these facts sufficiently establish that the police knew that they were invading Mrs. Johnson's "reasonable expectations of privacy." [1] The search of the purse was thus not directed at the owner and occupant of the apartment, but at Mrs. Johnson.

The warrant, however, authorized the search of an apartment that was, in the words of the supporting affidavit, "occupied by John Doe alias Pete described as a Negro male, 49–50 yrs. 165 lbs., 5'6", Medium Complexion." I do not doubt that this authorized the search of "Pete" as well as his apartment.[2] But the warrant did not authorize a search of an individual the police knew to be a mere visitor in the apartment.

Nor, in my view, did the affidavit contain sufficient information to justify the issuance of such a warrant. The Supreme Court has told us that "the Fourth Amendment protects people, not places." [3] One does not give up that protection by simply entering the private residence of another.[4] Giving effect to this personal guarantee may

---

*supra,* 284 A.2d at 294. To justify inclusion in the warrant of appellee by name would require an investigative effort not reasonably to be expected of officers seeking only the narcotics owned and retailed by, and the narcotics paraphernalia of, the occupant. And to detain appellee and preserve the *status quo* while a warrant to search the purse was obtained would constitute a more serious invasion of appellee's privacy than did the search at issue. Contrary to the holding of the court in *Nicks, supra,* 273 A.2d at 258, which permitted evidence to be seized from the hand of the appellant there on authority of a warrant to search the premises for narcotics and the likelihood appellant would destroy the evidence sought— which the dissent here would seem to uphold as an exemption from the warrant requirement, *see* note 9 *infra*—we hold only that the purse, not appellee's person, was embraced by the warrant.

1. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

2. This result is the same whether the inquiry is based on "reasonable expectations of privacy" or one's physical control over the premises. *See* White, Effective Consent to Search & Seizure, 113 U.Pa.L.Rev. 360, 373 (1964).

3. Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). *See* Note, From Private Places to Personal Privacy: A Post-Katz Study of Fourth Amendment Protection, 43 N.Y.U.L.Rev. 968 (1968).

4. *See* Katz v. United States, 389 U.S. 347, 352, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In United States v. DiRe, 332 U.S. 581, 587, 68 S.Ct. 222, 225, 92 L.Ed. 210 (1948), the Supreme Court said, in suppressing the fruits of a search of a passenger in an automobile:

The Government says it would not contend that, armed with a search warrant for a residence only, it could search all persons found in it. . . . How then could we say that the right to

make the drawing of lines difficult, but we must make the attempt.

I would hold that a warrant to search individuals who are not occupants of an apartment may issue only if the police establish probable cause to believe either that any individual found in the apartment possessed seizable material, or that certain identified individuals possessed seizable materials. The former might be established, to give one example, by a showing that the apartment was a "shooting gallery," that is, a place used exclusively for the injection of narcotics.

But this warrant did not contain information from which one might reasonably infer that any non-occupant discovered in the apartment was subject to search. The incorporated affidavit recited only (1) that a reliable informant had reported that "Pete" "was selling illicit narcotic drugs within" the apartment, (2) that the informant "had purchased" such drugs in the past, and (3) that the officers had taken the informant to the premises, sent him in, and the informant had returned with narcotics. Probable cause to believe than *any* non-occupant found in the apartment possesses seizable objects is not established merely by showing that someone has purchased narcotics in the apartment two or more times. The reviewing magistrate could not have determined from the affidavit whether offenders made up ninety percent of the visitors to the apartment or one percent.[5]

The majority seems to view this as a single search because, despite the fact that it included two people, it covered a single place. In so doing, it constructs what is to me a new exception to the

warrant requirement, applicable to any individual who happens to be in that place. The court first states that the police may search wherever the objects of the warrant might reasonably be, including places in which they might have been hidden during the moments between the announcement of the search and the actual entry. It then recognizes the fourth amendment rights of those who are known to be merely present in the premises by applying a balancing test. Under that test, we would weigh the degree of the "invasion" of the bystanders' rights against the Government's justifications for believing that the objects of the warrant might have been transferred to them.

But the Fourth Amendment already requires that all searches be "reasonable." The majority has, in effect, deleted the requirement of a warrant issued upon probable cause to believe that the bystander has seizable objects. Exceptions to the warrant requirement are not new, but this one has a second troublesome aspect. It appears that the court has not prefaced this one with a requirement that the police have probable cause to believe, for example, that the bystander has seizable objects that, because of the threat of destruction must be immediately seized. Instead, it proceeds immediately to a consideration of whether the degree of the invasion of the bystander's rights was "reasonable." I know of no authority for searching an individual, or that space in which he has a "reasonable expectation of privacy," without probable cause to believe either that he possesses seizable objects or that he has committed a criminal offense.[6]

---

search a car without a warrant confers greater lattitude to search occupants than a search by warrant would permit. *See also* State v. Bradbury, 109 N.H. 105, 243 A.2d 302 (1968).

5. The likelihood that any individual present is engaged in conduct described in the warrant is inextricably related to the other uses to which the premises are put, the amount of traffic through the area, and the fluctuations of time. Five or

even fifty narcotics transactions would have a far different result depending on whether the place to be searched was a home, a vacant store or a restaurant with hundreds of patrons.

6. A protective *frisk* for weapons is another matter. *See* Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 1 (1968).

And in Walker v. United States, 117 U.S.App.D.C. 151, 327 F.2d 597 (D.C.Cir. 1963), discussed by the majority at page

Perhaps the temper of the times requires that such a change be made. Perhaps, also, the concept of personal privacy articulated by the Supreme Court must yield to some degree as a result. But the majority ought to expressly reveal that it is cutting back on the protection of privacy as we have heretofore known it and explained why that is necessary. It does not serve the law nor the public well to hide this important change.

I would decide this case by looking to the existing justifications for a search. Under that analysis, the police had two distinct ways of establishing authority to search Mrs. Johnson's purse while it was in her control. First, armed with sufficient foreknowledge, they could have obtained a warrant that covered her or all individuals the police found in the apartment.

Second, in the absence of foreknowledge, they could have relied upon one of the existing exceptions to the warrant requirement that may be invoked if the police have probable cause. And, of course, they could use the information they had acquired in their efforts to obtain a warrant to search "Pete's" apartment as part of their showing that they had that probable cause to search Mrs. Johnson.

But in this case the police have not yet shown that they had either. Although the warrant and affidavit recited that narcotics transactions had taken place in the apartment, nothing was said about the probability that an unidentified individual discovered on the premises would be a participant in such a transaction. That, of course, cannot be cured at this late date.

And, limited to the record before us, I cannot say that the Government has presented facts that would justify the search under some exception to the warrant requirement. This was no mere weapons frisk.[7] There is no showing that the police had probable cause to arrest Mrs. Johnson.[8] And, while the "emergency" doctrine that is applied in some cases in which the destruction of evidence is threatened might apply here, it would add nothing to the requirements imposed by the arrest exception.[9] Mere possession of the narcotics is a criminal offense, and probable cause to search would have constituted probable cause to arrest.[10]

The police did have probable cause to believe that there were narcotics in the apartment. But the only evidence adduced at the hearing to indicate that Mrs. Johnson possessed narcotics were the sounds the police heard after they announced themselves and before they gained entry. These sounds were described as "suspicious noises" and the sound of a breaking window. The latter, if even probative, made it less likely that Mrs. Johnson had narcotics. The former, "suspicious noises," is simply meaningless. Although it is conceivable that further elaboration of the character of these noises would point more directly to Mrs. Johnson as a probable offender, this record is bare of such information.

On this appeal, the Government has suggested an alternative offense for which the police might have had probable cause to arrest Mrs. Johnson: pres-

979, *supra*, the detective executing the warrant *saw* the objects passed from one occupant of the residence to another occupant. Further, the affidavit supporting the warrant had recited that both individuals were selling narcotics from the residence. *Id.* at 598.

7. *See* United States v. Robinson, 153 U.S. App.D.C. 114, 471 F.2d 1082 (1972) (en banc).

8. *See* United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653

(1950). *Rabinowitz,* the commonly cited authority for this proposition, was "overruled" by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In fact, only that part of *Rabinowitz* that would have allowed a search beyond the immediate control of the arrestee was disapproved.

9. *See* Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

10. *See* Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

ence in an illegal establishment, 22 D.C. Code § 1515(a) (1967). The record will not support that assertion either, for the few facts that were developed at the hearing tended to negate any inference that she had knowledge of the nature of the establishment she was in, *see* Jones v. United States, 271 A.2d 559, 560 (D. C.App.1970), or that she was chargeable with such knowledge by reason of the obviousness of the situation. *See* Cook v. United States, 272 A.2d 444, 446 (D. C.App.1971).

The record is deficient in these respects because the trial judge focused exclusively on whether the search preceded a formal arrest.[11] As the majority notes, the issue should have been whether probable cause to arrest preceded the search.[12] For this reason, I would reverse and remand with directions to hold a new suppression hearing.

---

11. The court ruled:
    With reference to the Defendant Gwendolyn E. Johnson, the Court finds that probable cause possibly did exist for her arrest, but the search preceded her arrest and the search was improper. Hearing Transcript at 30.

12. *See* Bailey v. United States, 128 U.S. App.D.C. 354, 389 F.2d 305, 308 (1967); majority opinion at note 2.