Rudolph G. GUZMAN, #215272,
Petitioner-Appellee,

v.

W. J. ESTELLE, Director, Texas Department of Corrections, Respondent-Appellant.

No. 73–2626.

United States Court of Appeals,
Fifth Circuit.

May 3, 1974.

John L. Hill, Atty. Gen. of Texas, Lonny F. Zwiener, Joe B. Dibrell, Asst. Attys. Gen., Larry F. York, First Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

William T. Armstrong, Staff Counsel for Inmates, Texas Dept. of Corrections, Weldon, Tex., Harry H. Walsh, Atty. in Charge, Huntsville, Tex., for petitioner-appellee.

Before BROWN, Chief Judge, and AINSWORTH and MORGAN, Circuit Judges.

AINSWORTH, Circuit Judge:

This is an appeal from the district court's grant of habeas corpus relief. The sole issue raised is whether appellee's Fourth Amendment rights were violated by the admission in evidence at his state court trial of six capsules of heroin found in his possession. We hold that the capsules were properly admitted at the trial; and we reverse.

I.

On February 27, 1969, two members of the Special Services detail [1] of the Austin, Texas, Police Department, Ser-

1. At this time, there were nine persons in the Special Services detail.

geant Hersom and Officer Taylor, obtained a warrant authorizing a search for narcotics of the premises of Jessie Reyna Soliz "and other person or persons unknown to affiants by name, age, or descripton." The warrant, which also called for the arrest of Soliz, was issued upon an affidavit by the officers stating that they had received information from a reliable informant that Soliz was keeping and selling narcotics at his residence; that the informant had, within the prior forty-eight hours, seen Soliz sell narcotics to narcotics users from a fingerstall kept on his person; and that a narcotics rig was kept in the house for addicts who wished to inject the narcotics immediately. The officers further related that their detail had maintained a surveillance of the Soliz residence and that several persons known to be addicts and users of narcotics entered the house, stayed for a few minutes, and then left.

On February 28, 1969, the warrant was executed by three other members of the Special Services detail, Captain Gann, Sergeant Lewallen, and Sergeant Spain. As the officers approached the back door of the Soliz residence, Mrs. Soliz opened the door, whereupon she was advised that the three were police officers. She was further informed that they had a search warrant for the premises, and she was given a copy of the warrant. The officers then entered the house and proceeded through the kitchen and the dining room and into a bedroom, in which they found Rudolph Guzman, appellee, seated on the bed next to a woman.[2] As the officers entered the bedroom, appellee jumped to his feet. He appeared to be startled and frightened. While appellee was getting to his feet, Captain Gann and Sergeant Lewallen took physical control of him. As Captain Gann held appellee by his left arm, Sergeant Lewallen frisked appellee[3] and removed from his right front pocket a fingerstall[4] in which were six gelatin capsules containing a brownish, powdery substance subsequently determined to be heroin. After a plea of not guilty and a nonjury trial, appellee was convicted of unlawful possession of a narcotic drug, heroin, and was sentenced to 17 years' imprisonment. Over objection of appellee's counsel, the gelatin capsules were admitted at the trial. The conviction was affirmed by the Texas Court of Criminal Appeals, and, after the exhaustion of state remedies, federal habeas corpus relief was granted by the district court below.[5]

## II.

The Fourth Amendment secures the right to be free from "unreasonable searches and seizures." *E. g.*, Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1969).[6] Since the ultimate standard set forth in the amend-

---

2. In addition to Mrs. Soliz, appellee, and the woman seated on the bed with him, the officers saw on the Soliz premises a young woman believed to be the daughter of Mrs. Soliz and a small child.

3. For the protection of the officers involved, it is the policy of the Austin Police Department to conduct a weapons search of anyone in a house that is the subject of a narcotics search warrant.

4. A fingerstall or thumbstall is an elastic rubber object placed over a finger or thumb by such persons as bookkeepers to avoid cutting their fingers when turning pages.

5. The district court held that the search and seizure of appellee was unreasonable for these reasons: (1) a warrant directing the search of a house does not authorize the search of any person, such as appellee, who might be found there; (2) the warrantless search of appellee was unjustified because (a) it was not within the scope of a frisk under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and (b) it was not valid as a search incident to an arrest because "there was nothing to indicate that Guzman was or had been engaged in the commission of a crime."

6. In full, the Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

ment is reasonableness, *e. g.,* Cady v. Dombrowski, 413 U.S. 433, 439–440, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973); United States v. Edwards, —— U.S. ——, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), it is clear that the Amendment does not speak in absolute terms, Terry v. Ohio, *supra,* 392 U.S. at 9, 88 S.Ct. at 1873; Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960); United States v. Ragsdale, 5 Cir., 1972, 470 F.2d 24, 27; United States v. Lipscomb, 5 Cir., 1970, 435 F. 2d 795, 800, cert. denied, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971). The courts have long shown a willingness to examine and balance the two basic values at stake in the area of search and seizure: the practical demands of effective criminal investigation and law enforcement; and the interest of citizens in freedom from rash interferences with their privacy. *See, e. g.,* United States v. United States Dist. Ct., E.D. of Mich., S.D., 407 U.S. 297, 314–315, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972); Ker v. California, 374 U.S. 23, 32, 83 S. Ct. 1623, 1629, 10 L.Ed.2d 726 (1963); Johnson v. United States, 333 U.S. 10, 14–15, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948); Carlton v. Estelle, 5 Cir., 1973, 480 F.2d 759, cert. denied, 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1973). *See generally* Note, Warrantless Searches and Seizures of Automobiles, 87 Harv. L.Rev. 835 (1974). Upon consideration of these values in the context of the facts and circumstances of this case, we conclude that the search of the appellee and the seizure of the narcotics did not violate the Fourth Amendment: the search was made with probable cause and the exigencies of the situation required that the search be conducted without a warrant. *See, e. g.,* Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782

(1967); Ker v. California, *supra,* (plurality opinion); McDonald v. United States, 335 U.S. 451, 454–455, 69 S.Ct. 191, 192–193, 93 L.Ed. 153 (1948); Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).[7]

### III.

The delicate weighing of the interests of privacy and law enforcement which defines the Fourth Amendment is reflected in the first instance in the required proof of the existence of probable cause as a predicate of a valid search or arrest. *See, e. g.,* Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); United States v. Sanchez, 5 Cir., 1969, 412 F.2d 1177, cert. granted in part and judgment vacated, cert. denied in part, 397 U.S. 320, 90 S.Ct. 1130, 25 L.Ed.2d 338 (1970). As defined long ago, probable cause is constituted by "facts and circumstances . . . such as to warrant a man of prudence and caution in believing that the offense has been committed . . . ." Stacey v. Emery, 97 U.S. 642, 645, 24 L.Ed. 1035, 1036 (1878); *see* Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1949). Probable cause deals in terms of the probabilities associated with the everyday practical and factual considerations of reasonable men. *See, e. g.,* Brinegar v. United States, *supra,* at 176, 69 S.Ct. at 1311; United States v. Colbert, 5 Cir., 1973, 474 F.2d 174, 178–179 (en banc) (Brown, C. J., concurring). "Requiring more would unduly hamper law enforcement. To allow less would be to leave

---

7. We do not reach the question whether appellee may have been validly searched pursuant to the authority of the narcotics search warrant for the Soliz premises. *See, e. g.,* State v. DeSimone, 60 N.J. 319, 288 A.2d 849 (1972); State v. Wise, 284 A.2d 292 (Del.Super.Ct.1971); Nicks v. United States, 273 A.2d 256 (D.C.Ct.App.1971); Mascolo, Specificity Requirements for Warrants under the Fourth Amendment: Defining the Zone of Privacy, 73 Dick.L.Rev. 1, 19–20 (1968); 58 Cornell L.Rev. 614 (1973).

law-abiding citizens at the mercy of the officers' whim or caprice." *Id.*, 338 U.S. at 176, 69 S.Ct. at 1311.[8]

■ Determinations of probable cause are best made by viewing the facts of a particular situation as a whole. *See, e. g.*, United States v. Lopez-Ortiz, 5 Cir., 1974, 492 F.2d 109; United States v. Doyle, 5 Cir., 1972, 456 F.2d 1246; Bailey v. United States, 1967, 128 U.S.App.D.C. 354, 389 F.2d 305, 308–309. Each case must be decided on its own facts and circumstances, for no formula exists for calculating probable cause. Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374 (1931); *see, e. g.*, United States v. Johnson, 1973, 154 U.S.App.D.C. 393, 475 F.2d 977. Consideration of several factors leads us to conclude that the search of appellee in this case was based on probable cause.[9]

The Austin police were told by a reliable informant that narcotics were being sold to narcotics users by Soliz at his house. Sales were made by Soliz, the informant related, from a fingerstall. Surveillance by the officers who procured the warrant revealed that several persons known to them as narcotics addicts and users proceeded in and out of the house, each one staying for only a few minutes. On this basis, an independent judicial officer determined—and his determination is not here challenged —that there was probable cause to believe that narcotics were kept and sold at the Soliz residence. The warrant also recited that paraphernalia were kept on the Soliz premises for users who wished to inject the narcotics immediately. In addition, Sergeant Hersom, one of the affiants for the search warrant, had received information that appellee was staying at the Soliz residence and was dealing in narcotics. Sergeant Hersom testified, however, that in the course of his surveillance he had not seen appellee at the house.

When the officers executing the warrant entered the bedroom of the Soliz house and found appellee, Captain Gann and Sergeant Lewallen grabbed him as he jumped to his feet. Captain Gann testified at the trial that he had known appellee for several years; that he was aware that appellee had a prior criminal record, though he did not know the nature of the convictions; and that he had information that appellee was a user of narcotics. Appellee's presence at the Soliz residence thus confirmed the warrant's recitation that there were other narcotics users on the premises. Further, it lent credence to Sergeant Hersom's information that appellee was dealing in narcotics at the Soliz residence. *See* Ker v. California, 374 U.S. 23, 37, 83 S.Ct. 1623, 1631–1632, 10 L. Ed.2d 726 (1963) (plurality opinion).

Pursuant to departmental policy, Sergeant Lewallen, in the interest of protecting the three officers in the room, then frisked appellee for weapons.[10] During the frisk, Sergeant Lewallen came across an object in appellee's right front pocket, which, upon removal, he

---

8. "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests." Brinegar v. United States, *supra*, 338 U.S. at 176, 69 S. Ct. at 1311. *See also* United States v. Seay, 5 Cir., 1970, 432 F.2d 395, 400, cert. denied, 401 U.S. 942, 91 S.Ct. 949, 28 L.Ed.2d 223 (1971).

9. In the context of this case, probable cause may take the forms of probable cause to believe that the person who is the subject of the search possesses seizable objects or that he has committed a criminal offense. Since we are concerned with a search for narcotics, the mere possession of which is a criminal offense, these forms of probable cause merge.

10. It is not contended, and we do not think, this frisk was unwarranted. *See* Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

found to be a fingerstall containing six gelatin capsules. The frisk produced no other seizable materials.

■ Though we do not decide whether Sergeant Lewallen could reasonably have believed that the rubber fingerstall containing the capsules was a weapon that should be removed for the officers' protection, *see* Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the fact that Sergeant Lewallen felt such an object in the course of the patdown must be considered in determining probable cause. First, users and sellers of narcotics frequently carry the substance on their persons in capsules, thumbstalls, and similar objects, F. Bailey & H. Rothblatt, Handling Narcotic & Drug Cases § 298 (1972); second, the search warrant in this case specifically stated that Soliz was selling narcotics to users from a fingerstall that he carried on his person; and, third, the criminal activity recited in the warrant involved not only the possession of narcotics, but their sale, that is, the transfer of narcotics from one person to another.[11] In light of these and the aforementioned elements, Sergeant Lewallen was not required to ignore the object he discovered in the course of his frisk. A search for narcotics may be justified where an officer's search for weapons unexpectedly produces evidence providing or contributing to probable cause to believe that a

person possesses narcotics. *See* Pace v. Beto, 5 Cir., 1972, 469 F.2d 1389, 1390–1391.[12] Considering this and the facts and circumstances as a whole,[13] probable cause existed for searching the appellee's pocket and for seizing the fingerstall containing the capsules of narcotics.

### IV.

We turn now to the question whether this case presents exigent circumstance to justify the search of appellee without obtaining a warrant. Qualification as exigent circumstances turns "in part upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search." Camara v. Municipal Court, 387 U.S. 523, 533, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 930 (1967); *see, e. g.,* Walker v. United States, 1963, 117 U.S.App.D.C. 151, 327 F.2d 597, cert. denied, 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 500 (1964). The Supreme Court has identified several factors that it considers exigent: (1) an alerted criminal fleeing or likely to take flight; (2) contraband, stolen goods, or weapons as the objects of the search;[14] (3) lack of a prior opportunity for the defendant to destroy incriminating evidence; (4) objects of the search that may be quickly and easily removed or destroyed; (5) easy access of the criminal to the objects of the search; (6) availa-

---

11. It would not be unreasonable, for example, to assume that appellee was a customer or dealer who was purchasing or selling narcotics and was holding some in his pocket.

12. Stated differently, this means that the search for narcotics is not tainted by the fact that probable cause for this later search derives, solely or partially, from an earlier search for weapons. *See* Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality opinion; *id.* at 510, 91 S.Ct. at 2060 (White, J., dissenting).

13. "The test of probable cause is not the articulation of the policeman's subjective theory but the objective view of the facts." Dodd v. Beto, 5 Cir., 1970, 435 F.2d 868, 870. Probable cause is determined upon the objective facts available for consideration by the law enforcement agency conducting the

search or arrest. *E. g.,* Stassi v. United States, 5 Cir., 1969, 410 F.2d 946, 952 n. 7; United States v. Ragsdale, 5 Cir., 1972, 470 F.2d 24; United States v. Lopez-Ortiz, 5 Cir., 1974, 492 F.2d 109; United States v. Stratton, 8 Cir., 1972, 453 F.2d 36, cert. denied, 405 U.S. 1069, 92 S.Ct. 1515, 31 L.Ed.2d 800; White v. United States, 8 Cir., 1971, 448 F.2d 250, 254, cert. denied, 405 U.S. 926, 92 S.Ct. 974, 30 L.Ed.2d 798 (1972). *See also* United States v. Pentado, 5 Cir., 1972, 463 F.2d 355, 361, cert. denied, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 271 (1973).

14. *See* Coolidge v. New Hampshire, 403 U.S. 443, 462, 471, 91 S.Ct. 2022, 2035–2036, 2041, 29 L.Ed.2d 564 (1971) (plurality opinion); *id.* at 519, 91 S.Ct. at 2064 (White, J., dissenting). *But see* Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

bility of confederates to aid the criminal in fleeing or in the destruction of the objects of the search; and (7) lack of time in which the search warrant could have been secured. *See, e. g.*, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (plurality opinion); Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality opinion). *See also* Note, Warrantless Searches and Seizures of Automobiles, 87 Harv.L.Rev. 835 (1974). All of these elements were present in the case before us.

The Austin police officers went to the Soliz residence armed with a search warrant evidencing probable cause to believe that narcotics were used and sold on the premises to be searched. In executing the warrant, the officers discovered appellee, whom they had little or no reason to believe would be there.[15] Appellee's reaction upon seeing the officers indicates that for him their visit was quite unexpected. In his pocket, appellee had a fingerstall containing six capsules of heroin, the mere possession of which is a crime. This contraband was small and easily destroyed, and appellee's access to it was simple. Appellee had every reason to remove or destroy the contraband, and he had not, after seeing the police, had an opportunity to do so. The officers saw, moreover, at least four other persons on the premises who could aid appellee either to flee or to rid himself of the contraband.

After appellee had been frisked, the officers had probable cause to believe that he concealed narcotics in his pocket. Unless appellee was briefly detained and his pocket searched, he could walk from the premises with the contraband. It would be unreasonable in this situation to expect the police to seek a warrant prior to their search—and after their frisk—of appellee in the hope that appellee would be at the Soliz premises with the narcotics when they returned. *See* Carlton v. Estelle, 5 Cir., 1973, 480 F.2d 759; cert. denied, 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1973); United States v. Johnson, 1973, 154 U.S.App. D.C. 393, 475 F.2d 977, 979; Walker v. United States, 1963, 117 U.S.App.D.C. 151, 327 F.2d 597, 600, cert. denied, 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 500 (1964). Clearly, time was of the essence: if appellee's pocket was not searched immediately, either appellee would flee or

---

15. Most of the information received by the police from the informant concerned the sales activities of Soliz. Surveillance had shown that narcotics users proceeded in and out of the house. At the time the warrant for the Soliz premises was sought, however, the only knowledge the affiants had concerning appellee was the information Sergeant Hersom had received that appellee was staying at the Soliz residence and was dealing in narcotics there. During the period of his surveillance, though, Sergeant Hersom had not seen appellee at the Soliz premises. Appellee, furthermore, was not known to have substantial control over the premises; he was known merely as a visitor. In view of this and the fact that appellee had not been seen in the course of surveillance by Sergeant Hersom, the affiants could not reasonably be expected to assume that appellee was on the Soliz premises at the time the warrant was sought or that he would be there when the warrant was executed. It was not until the warrant was executed that several of the factors contributing to probable cause for the search of appellee came into play; namely, appellee's presence on premises where narcotics were sold and used; awareness in this context of appellee's use of narcotics and his prior criminal record; and the information resulting from the frisk.

This situation is to be contrasted with that in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). That case, as Justice Stewart emphasized in his plurality opinion, dealt "with a *planned* warrantless seizure." *Id.* at 471 n. 27, 91 S.Ct. at 2041 n. 27 (emphasis in original); *see, e. g.*, United States v. Lisznyai, 2 Cir., 1972, 470 F.2d 707, 710, cert. denied, 410 U.S. 987, 93 S.Ct. 1516, 36 L.Ed.2d 184 (1973).

the contraband on his person would be removed or destroyed.[16]   The Fourth Amendment does not protect under such circumstances.   Searching appellee without a warrant was reasonable under the Amendment, for "the exigencies of the situation made that course imperative." McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948).

Stressing the particular circumstances presented by this case, we hold, therefore, that the six gelatin capsules containing heroin were properly admitted in evidence at appellee's state court trial. Accordingly, the judgment of the district court is

Reversed.

---

16. Had appellee been detained to prevent destruction of the contraband, while a warrant was sought, an arrest would have occurred since his freedom of movement would have been curtailed, see, e. g., Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959) ;   Vernon's Ann.Texas Code Crim.Proc. art. 15.22 (1966), thus defeating the purpose of a warrant, see United States v. Robinson, —— U.S. ——, ——, 94 S.Ct. 467, 472, 38 L.Ed.2d 427 (1972), and cases cited therein.