## Tommie D. COLDING *v.* STATE of Arkansas

CR 75-203                                     536 S.W. 2d 106

### Opinion delivered May 3, 1976
[Rehearing denied June 1, 1976.]

*Ed Daniel,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Robert A. Newcomb,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. A jury convicted appellant, Tommie D. Colding, Jr., of possession of heroin, and fixed his punishment at five years of confinement in the Department of Correction. From the judgment so entered, Colding appeals, arguing that the trial court erroneously failed to suppress the heroin found on his person pursuant to an allegedly unconstitutional search.

The facts pertinent to the challenged search are not disputed, nor is the validity of the search warrant itself challenged. The warrant commanded the executing officers to search the Ebony Pal, a bar, which had in its employment one Ronald Colding. The affidavit for the warrant stated that Dilaudid, heroin, and other controlled substances were

believed to be concealed on the premises, along with the records of illegal sales of controlled substances. The affidavit further stated that reliable informants had made narcotics purchases at the Ebony Pal from Ronald Colding and from unidentified sources, and that neighbors and local businessmen had complained to police about suspected narcotics traffic and "drug related disturbances" at the bar. The affiant, Detective H. L. Walters, also said that police had kept the bar under surveillance for approximately three hours, and "[d]uring this surveillance several known narcotics dealers came to this establishment."

At the hearing on the motion to suppress, Detective Richard Fulks testified that he was the first of ten officers to enter the building for the search. Upon entry, he saw appellant and three other persons; he did not know appellant personally. Fulks went to the counter, identified himself as a police officer, and asked who was running the club. When appellant answered that he was running the club at that time, Fulks gave him a copy of the search warrant and told him to place his hands against the wall. According to Fulks, the police had information that substantial amounts of narcotics were dealt at the club, and they believed that a majority of the club's habitués were armed. Accordingly, the first priority of the searching officers was to secure the establishment and to check all persons therein for weapons.

Detective Ron Bullerwell was the officer who frisked appellant for weapons. Bullerwell said that while he was "patting down" appellant he felt a "suspicious bulge" in appellant's right rear pocket. Bullerwell testified that he knew that appellant's billfold was in his left rear pocket, and he also knew from his experience as a narcotics officer that dealers usually packaged heroin for street sale in tinfoil packets inside plastic bags. When he removed the "suspicious bulge" from appellant's pocket, it proved to be a plastic bag containing tinfoil packets; the detective opened one packet and found that it contained a powdery brown substance. At that point Bullerwell arrested appellant and gave him the warnings required by *Miranda v. Arizona,* 384 U.S. 436. The court denied the motion to suppress.

On trial, additional facts were developed, *viz.,* Bullerwell

testified that in the course of the frisk he determined that the bulge in appellant's pocket was definitely a plastic bag before he pulled it out, and the officer also testified that while Colding generally cooperated with the search, the appellant did at one point try "to push back off the wall, come around and get me" after Bullerwell had commenced the frisk.

The most authoritative federal decision concerning this type of search involved facts quite similar to the instant appeal. In *Guzman v. Estelle*, 493 F. 2d 532 (5th Cir. 1974), Guzman, convicted in Texas courts of possession of heroin, petitioned for federal habeas corpus, alleging that the search that uncovered the narcotics on his person had violated his Fourth Amendment rights. The basis of Guzman's argument was that the police who conducted the search had a warrant authorizing only a search of the premises on which he was found,[1] since the warrant did not name Guzman specifically. Guzman also contended that a warrantless search of his person could not have been justified because no probable cause existed and because the search exceeded the scope of a permissible frisk for weapons.

The court reviewed the facts in detail. Before going to a suspected narcotics dealer's house, the Texas police had obtained a warrant authorizing the search of the residence; the affidavit for the warrant stated that the owner of the house, Soliz, had been observed trafficking in drugs in the house, and that police surveillance had disclosed the presence of known drug users in the house. The officers executed the warrant by giving a copy to Soliz's wife and proceeding through the house. They found Guzman in a bedroom; he jumped to his feet and appeared to be startled and frightened. An officer frisked Guzman for weapons and detected an object in his right front pocket, which he removed; it was a fingerstall[2] containing six gelatin capsules of heroin.

---

[1] The court did not actually reach the question of whether Guzman could have been validly searched pursuant to the authority of the narcotics search for the premises, deciding the case simply on the basis of the fact that the weapons frisk produced probable cause for a warrantless search.

[2] A fingerstall is a small rubber protector that clerical personnel place over fingertips to avoid cuts while turning pages.

The Fifth Circuit reasoned that "the fact that [the searching officer] felt such an object in the course of the pat-down must be considered in determining probable cause." Noting that users and sellers of narcotics frequently carry drugs on their persons in easily disposable and salable forms such as capsules, the court pointed to the fact that "the criminal activity recited in the warrant involved not only the possession of narcotics, but their sale, that is, the transfer of narcotics from one person to another." Under the circumstances, the court observed, "it would not be unreasonable, for example, to assume that [Guzman] was a customer or dealer who was purchasing or selling narcotics and was holding same in his pocket." The court concluded:

> "In light of these and the aforementioned elements, [the searching officer] was not required to ignore the object he discovered in the course of his frisk. A search for narcotics may be justified where an officer's search for weapons unexpectedly produces evidence providing or contributing to probable cause to believe that a person possesses narcotics. See *Pace v. Beto,* 5 Cir. 1972, 469 F. 2d 1389, 1390-91. [12]

After finding that probable cause existed for the search, the *Guzman* court turned to the issue of whether "this case presents exigent circumstances to justify the search of appellee without obtaining a warrant." The court ruled that such circumstances did exist, stating:

> "After appellant had been frisked, the officers had probable cause to believe that he concealed narcotics in his pocket. Unless appellant was briefly detained and his pocket searched, he could walk from the premises with the contraband. It would be unreasonable in this situation to expect the police to seek a warrant prior to their search — and after their frisk — of appellant in the hope that appellant would be at the Soliz premises when they returned. [Citations omitted.] Clearly, time was of the essence: if appellant's pocket was not searched im-

[12] Stated differently, this means that the search for narcotics is not tainted by the fact that probable cause for this later search derives, solely or partially, from an earlier search for weapons."

mediately, either appellant would flee or the contraband on his person would be removed or destroyed. The Fourth Amendment does not protect under such circumstances. Searching appellant without a warrant was reasonable under the Amendment, for 'the exigencies of the situation made that course imperative.' "

Another case remarkably similar to the instant appeal is *Poole v. State*, 247 So. 2d 443 (Fla. App. 1971). Officers obtained a warrant for the search of Poole's residence, but it did not name Poole; the warrant was based on information from confidential informants that they had purchased drugs in the residence. When the officers entered the building, they asked Poole who was in charge of the premises, and he said that it was he. The officers read the warrant to him and began the search, and noticed "an unnatural bulge under [Poole's] clothing in the area of his crotch. As a result of such suspicious circumstance, [Poole] was searched and a plastic bag containing a quantity of marijuana was removed from the area where [Poole] had attempted to secrete it. It was not until after the evidence was discovered and the search of the premises completed that appellant was arrested and charged with the offenses for which he was ultimately convicted."

Poole appealed his conviction of possession of marijuana, making the same argument as appellant in the instant case — "that although the search warrant involved in this case authorized a search of the premises and curtilage, it did not authorize a search of all persons who might be found on the premises at the time the search was conducted." The Florida court rejected this argument and affirmed the conviction, stating:

"When appellant acknowledged to the officers that he was in charge of the premises, they were justified in more carefully scrutinizing his outward appearance and demeanor than they would have been under other circumstances. It was with the information furnished them by the confidential informers [about drug traffic on the premises] in mind that they observed a bulge in appellant's clothing within the area of his crotch. Such a condition was, to say the least, unusual and justified

further exploration by the officers in order to determine whether at that moment appellant was engaged in illegal drug traffic which they were informed was being conducted on the premises. Since the officers were in appellant's dwelling under lawful authority conferred upon them by the court which issued the search warrant, and had reasonable cause to suspect that appellant was engaged in or connected with the unlawful activity against which the search warrant was directed, we are not persuaded that the search which they made of appellant's person which was triggered by the unusual bulge appearing in the crotch of his trousers was so unreasonable in a constitutional sense as to condemn the contraband seized as a result of that search."

Other cases, the rationale of which would uphold the search in the instant case, are *Guerra* v. *State,* 496 S.W. 2d 92 (Tex. Cr. App. 1973), *cert. denied,* 415 U.S. 975; *State* v. *De Simone,* 60 N.J. 319, 288 A. 2d 849 (1972); *Guzman* v. *State,* 461 S.W. 2d 603 (Tex. Cr. App. 1970); *Samuel* v. *State,* 222 So. 2d 3 (Fla. 1969); *Hernandez* v. *State,* 437 S.W. 2d 831 (Tex. Cr. App. 1968), *cert. denied,* 395 U.S. 987; *People* v. *Pugh,* 69 Ill. App. 2d 312, 217 N.E. 2d 557 (1966).

It is apparent that the court did not err in admitting the evidence.

Affirmed.