[No. 24374. Department One. April 21, 1933.]

THE STATE OF WASHINGTON, *Respondent*, v. W. L. RAUM, *Appellant*.[1]

*Edward M. Connelly,* for appellant.

*Chas. W. Greenough* and *Ralph E. Foley,* for respondent.

[1]Reported in 21 P. (2d) 291.

BEALS, C. J.—Defendant, William L. Raum, was charged by information with the crime of manufacturing intoxicating liquor with intent to sell. From a judgment entered by the court upon a verdict of guilty and from the sentence imposed pursuant thereto, defendant appeals.

Appellant assigns error upon the admission in evidence of an exhibit offered by the state consisting of a key ring and the keys attached thereto, upon the refusal of the trial court to hold that the evidence introduced by the prosecution was insufficient to support the charge of which appellant was found guilty, and upon the denial of his motion for a new trial.

The facts disclosed by the evidence introduced by the state are briefly as follows: December 5, 1931, deputy sheriffs Burnett, Duggan and Brady (having provided themselves with a search warrant), accompanied by two Federal agents and two police officers, went to the premises known as 3417 north Lee street, Spokane, for the purpose of conducting a search for contraband liquor. A few moments prior to the starting of the expedition, one of the Federal officers called the house on the telephone and discussed with a man who answered to the name of "Bill" the matter of the purchase of a keg of moonshine. Upon arriving at the premises, some of the officers stopped in front thereof while the two Federal officers drove their car along the alley back of the house. Just as they arrived, they met appellant, who was driving his Ford coupe out of the garage on the rear of the lot.

The Federal officers stopped appellant, told him that they were Federal agents and that they had a search warrant for the premises. They testified that appellant told them they could search his car, which they did, with the result that they discovered no contraband of any sort. The officers testified that they

then informed appellant that he was under arrest and took him up towards the rear of the dwelling, where they met the other officers.

Practically all of the witnesses for the prosecution who were present at the time of the arrest testified to the following facts as having occurred subsequent to the arrest of appellant as narrated by the Federal officers: The house was locked, and appellant was asked if he had the keys, which he denied, stating that he did not live in the house, but that he had driven there to see a man named William Clark, from whom he was endeavoring to collect a bill for a tire which had been sold to Clark by appellant's employer. Appellant put his hand in his pocket, and the officers, believing that he had in his possession a key to the house, endeavored to procure possession thereof. In the course of this proceeding, deputy sheriff Barnett admits that he struck appellant in the face, although it is not contended that appellant was even attempting to do more than resist the forcible opening of the hand in which he was endeavoring to conceal certain keys which were taken from him by the officers. One of the keys thus forcibly taken from appellant unlocked a door to the house, in which was found a still in operation and a quantity of liquor in the course of distillation into moonshine. No person save appellant was found on or about the premises.

There is no question but that the house had been used as a place for the unlawful manufacture of intoxicating liquor, the only question presented on this appeal being whether or not the trial court erred in receiving in evidence the keys violently taken from appellant upon a search of his person. When these keys, together with the other exhibits on the part of the state, were offered in evidence, appellant objected to their admission, and upon this objection being over-

ruled, the state having thereupon rested, appellant immediately challenged the sufficiency of the evidence to sustain a conviction, and moved for a directed verdict of not guilty. The record shows that, after argument, the court asked counsel for the state:

"Have you any authority to show that the officers had the right to search the defendant himself before they found anything else?"

After further argument, the court denied appellant's motions, and the trial proceeded.

The search warrant procured by the deputy sheriffs was of the "John Doe" variety, and it does not appear that the officers had connected appellant with the unlawful operations which they believed were being carried on in the house prior to the time they found him leaving the premises in his automobile as above narrated. Assuming that the officers had the right to detain appellant when they met him driving his car out of the garage, and assuming that their search of his car was lawful, as under their testimony it undoubtedly was, they stating that appellant gave them permission to make the search, it is clear that, no articles of contraband having been discovered in the car and there being none on appellant's person, the officers, prior to the time they searched the house, had no lawful ground for believing that appellant had committed any offense. Appellant was then entitled to the protection of the law against unlawful searches and seizures which is the constitutional right of every citizen. *State v. Gibbons,* 118 Wash. 171, 203 Pac. 390; *State v. Buckley,* 145 Wash. 87, 258 Pac. 1030; *State v. Knudsen,* 154 Wash. 87, 280 Pac. 922; *State v. Kinnear,* 162 Wash. 214, 298 Pac. 449, 74 A. L. R. 1400.

In support of its contention that the officers were justified in placing appellant under arrest and forc-

ibly searching his person, respondent cites the opinion of this court in the case of *Olympia v. Culp,* 136 Wash. 374, 240 Pac. 360. In the case cited, it appeared that the sheriff, having procured a "John Doe" search warrant directing the search of certain premises for intoxicating liquor, stationed two of his deputies at the back door of the house and himself entered at the front. Appellant Culp sought to escape from the house through the back door, where he was seized by the officers. The opinion states that:

. ."In the scuffle which followed, the officers came into contact with a bottle which the appellant had in his pocket, and which, on examination, proved to contain intoxicating liquors capable of being used as a beverage."

Upon the trial of Culp for the offense of unlawful possession, he was convicted, and appealed, contending *inter alia* that his person was searched and the bottle of liquor taken from him merely because he was an occupant of the building at the time the search warrant was executed. Appellant contended that his motion to suppress evidence directed against the bottle and its contents should have been granted. This court held that it clearly appeared that appellant was arrested while attempting to escape from the premises, and that, under the circumstances, the arrest and search were lawful. In the course of its opinion, this court said:

"Officers making a search of premises under a search warrant may lawfully detain all persons found therein until the search is concluded. Any other rule would frustrate the purposes of the search; the officers would be compelled to stand idly by while the articles for which the search was instituted were carried away. The law is not so impotent as this. The officers may, under a warrant to search the premises, lawfully search any one found therein whom they

have reasonable cause to believe has the articles for which the search is instituted upon his person. But we need not go so far as this in the present case. The officers having the right to detain the appellant could use such force as was necessary for that purpose; and if in using that force they discovered that he was personally guilty of an offense, they could lawfully arrest him for that offense, even though it be a misdemeanor, as an offense committed in their presence.''

An entirely different situation is presented in the case at bar. Appellant did not try to escape from the premises after the search began, but was proceeding to depart therefrom in an orderly manner, being evidently unaware that a search was in progress. He did not resist the Federal officers who first detained him, and allowed them to search his car, in which no liquor was discovered. Under these circumstances, at this stage of the proceedings the officers had no right to forcibly search the person of appellant against his consent. It does not appear that they had any reason sufficient in law for believing that appellant had been guilty of any offense, and he certainly had committed none in their presence. It is not contended that appellant made any attempt to escape, and we find nothing which justified the treatment accorded appellant at the time the keys were taken from him. This property, then, was unlawfully procured by the officers, and was subject to appellant's motion to suppress the same as evidence against him.

 Respondent contends that appellant's objection was not seasonably urged, no motion to suppress evidence having been made before the trial. Appellant relies upon the opinion of this court in the case of *State v. Dersiy,* 121 Wash. 455, 209 Pac. 837, in which an opinion was first filed by a department of this court, a supplemental opinion having been filed after a rehearing of the case *En Banc.* It was held

that a motion to suppress evidence made immediately following the calling of the case for trial was not timely, the motion being based upon an affidavit stating that the evidence had been seized without authority of law. In the supplemental opinion filed after the case was argued to the entire court, it is stated, after narrating the motion to suppress and the refusal of the court to hear the same:

"At the trial, the liquor was offered in evidence by the state and received over the objection of appellant. There was nothing in the state's evidence to indicate that the liquor had been unlawfully seized.

"In discussing this question, the Department decision says:

" 'When a case of this character is called for trial, the court is not required, at that time, to try out and investigate the circumstances under which the liquor was taken, to determine whether it was admissible in evidence.'

"Questions of this character generally arise under one of the three following circumstances:

"(1) Where, by the direct or proper cross-examination of the state's witnesses, it is made to appear, or it is otherwise admitted, that the articles which are offered in evidence were unlawfully seized. Under those circumstances, it is the duty of the trial court, upon objection, to refuse to receive them in evidence. No question of fact exists under these circumstances. The court is only called upon to rule on the admissibility of evidence upon admitted or conceded facts. It is not required to stop in the midst of the trial and try a collateral fact."

It appears that, in the case cited, there was nothing in the evidence introduced by the state to show that the liquor, to the introduction of which as evidence appellant was objecting, had been unlawfully seized. In the case at bar, it clearly appears from uncontradicted testimony introduced by the prosecution that the search of appellant's person and the seizure of

the keys by the use of which the officers obtained access to the house were unlawful. The trial court was therefore, as stated in the foregoing quotation, "only called upon to rule on the admissibility of evidence upon admitted or conceded facts."

This case, then, clearly falls within the exception so clearly stated in the *En Banc* opinion of this court above referred to. The trial court was not required to try out any collateral issue or any issue of fact, but was called upon only to consider the undisputed evidence as disclosed by the testimony of the state's witnesses. The trial court, then, erred in receiving in evidence, over appellant's objection, the keys of the possession of which appellant had been unlawfully deprived by the officers of the law.

For error in the admission of evidence above set forth, the judgment appealed from is reversed, with instructions to the trial court to grant appellant's motion for a new trial.

HOLCOMB, MITCHELL, and MILLARD, JJ., concur.