[No. 402-2. Division Two. April 5, 1972.]

The City of Tacoma, *Respondent*, v. Joseph Robert Mundell, *Appellant*.

*James B. Gorham* (of *Snure & Gorham*), for appellant.

*Robert R. Hamilton, F. H. Chapin, Jr.,* and *Hugh W. Judd,* for respondent.

Pearson, J.—Defendant, Joseph Robert Mundell, appeals from a conviction for possession of a narcotic drug and possession of a dangerous drug. Both offenses were prosecuted as misdemeanors in municipal court, and later appealed to the Superior Court for Pierce County. A motion to suppress was denied in the superior court and defendant was found guilty.

Defendant contends that the trial court erred in not granting his motion to suppress certain evidence removed

from his person. He bases this contention on three separate grounds: (1) The supporting affidavit was insufficient to establish probable cause for issuance of a search warrant. (2) The warrant to search the premises did not authorize a search of defendant's person. (3) The search warrant was not properly served upon defendant.

We agree with defendant's second contention and reverse his conviction.

On February 3, 1970 two officers of the Tacoma Police Department obtained a search warrant from Judge Waldo F. Stone of the Municipal Court for the City of Tacoma, commanding any peace officer to search a premises on North Fife Street in Tacoma. The warrant, which mentioned no individuals (either by name or "John Doe") is set out in part below.[1] The warrant was based upon an affidavit signed by the two police officers, stating that a reliable informant has observed the possession and sale of narcotics at the premises.[2]

---

[1] "Now, THEREFORE, in the name of the State of Washington, you are hereby commanded, with the necessary and proper assistance, to enter and search said premises, and to seize all narcotic drugs/dangerous drugs there found, together with the vessels in which they are contained and all implements, furniture and fixtures used or kept for the illegal manufacture, sale, barter, exchange, giving away, furnishing, or otherwise disposing of such narcotic drugs/dangerous drugs, and to safely keep the same and to make a return of said warrant within three days, showing all acts and things done thereunder, with a particular statement of all articles seized and the name of the person or persons in whose possession the same were found, if any, and if no person be found in the possession of said articles, the return shall so state. A copy of said warrant shall be served upon the person or persons found in possession of such narcotic drugs/dangerous drugs, furniture or fixtures so seized, and if no person be found in possession thereof, a copy of said warrant shall be posted upon the door of the building or the room where the same are found, or, if there is no door, then in any conspicuous place upon the premises."

[2]

"STATE OF WASHINGTON ⎱ ss.
"County of Pierce ⎰

"COMES NOW J. A. KNUTSEN #077 V. RADMAN # 030, who, being first duly sworn on oath complains, deposes and says:

"That he has probably [sic] cause to believe and in fact does believe that, in violation of the laws of the State of Washington,

Late in the evening of February 3, 1970, five Tacoma police officers went to the North Fife address. Defendant, who was renting the house, answered the door, and when one of the officers exhibited his badge and stated that he had a search warrant, defendant let them in. The premises were dark. Three additional occupants were seated in the living room. One of the officers read the warrant aloud, and the search then commenced. During the search of the premises, defendant's person was searched and a small quantity of marijuana and two dextroamphetamine capsules were found in his clothing. No contraband was otherwise found on the premises. The officer admitted at trial that the only basis on which he searched defendant's person was the search warrant itself. Defendant was

narcotic drugs/dangerous drugs, as defined by law are being used, manufactured, sold, bartered, exchanged, given away, furnished or otherwise disposed of or kept, in, about and upon certain premises within Pierce County, Washington, designated and described as follows, to-wit:

"1923 No. Fife (Two Story Frame Dwelling) City of Tacoma, County of Pierce, State of Washington.

"That affiant's belief is based upon the following facts and circumstances:

"Respectable and longtime citizen of the City of Tacoma requested officers contact citizen at citizens home. With the mother present, this citizen advised officers that a narcotics situation existed at the above residence. Officers were aware of this as we have been conducting an investigation into this residence regards to narcotics and on several occassions [sic] have seen known narcotics users and sellers frequenting this home.

"This citizen further advised officers that while present in the above residence on or about January 27, 1970 narcotics were seen in the residence and also sold from the residence. The narcotics consisted of suspected marijuana, methadrine and hypodermic syringes and needles.

"Officers hold the information gained by this respectable citizen to be true as this citizen is a high school graduate and presently attends college. This citizen has lived in Tacoma for several years and has never had any trouble with the Police or any other authorities. Officers have been investigating this residence for approx. 2 weeks and observed known and convicted narcotics users and sellers frequenting this residence.

"/s/ J. A. Knutsen /s/V. Radman

"J. A. Knutsen #077 V. Radman #030
"T.P.D.-S.I.N.D. T.P.D.-S.I.N.D."

subsequently arrested and transported to the station. He was never given a copy of the warrant personally, but one was placed in his property box after he was booked in jail.

With regard to the sufficiency of the supporting affidavit, it has often been said that affidavits of probable cause are tested by much less vigorous standards than those governing the admissibility of evidence at trial, and issuing magistrates are not to be confined by restrictions on the use of their common sense. Furthermore, a magistrate's determination of probable cause should be given great weight by reviewing courts. *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *State v. Hodge,* 5 Wn. App. 639, 490 P.2d 126 (1971).

When the affidavit is based upon information from an unidentified informer, the often quoted 2-pronged test in *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964) must be met. That is, the magistrate must be informed of: 1. Some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were. 2. Some of the underlying circumstances from which the officer concluded that the informant was credible or his information was reliable. *State v. Hodge, supra; State v. Walcott,* 72 Wn.2d 959, 435 P.2d 994 (1967).

We feel the affidavit in the present case met the *Aguilar* test. The informer claimed he personally observed narcotics in the residence and saw them being sold there. Hypodermic syringes and needles were also observed. The affiants stated that the informant was a college student at the time and had never had any trouble with the police. The affiants corroborated the information by stating they had been conducting an investigation at the same residence and had seen known narcotics users and sellers frequent the home.

Although the affidavit did not contain the most reliable of information, recognizing the magistrate's determination is entitled to great weight, we conclude the affidavit was sufficient to establish probable cause. It is most important that the informant's *present* information is truthful and

reliable, and not that he has been reliable in the past. *See United States v. Harris,* 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971).

 While the warrant was based upon probable cause, we are of the opinion that the general search warrant to search the North Fife Street premises did not permit, by itself, a search of defendant's person. There are no Washington cases that clearly answer this issue; however, it has been said that an officer who has a warrant to search for and seize property upon designated premises does not possess authority so broad as to allow him to search all persons found in it. *United States v. Festa,* 192 F. Supp. 160 (Mass. 1960) (citing *United States v. Di Re,* 332 U.S. 581, 92 L. Ed. 210, 68 S. Ct. 222 (1948)). A specific warrant to search a premises cannot be converted into a general one to search individuals. *See United States v. Haywood,* 284 F. Supp. 245 (E.D. La. 1968). *See also, State v. Raum,* 172 Wash. 680, 21 P.2d 291 (1933).

Clearly, defendant could have been searched incident to a lawful arrest if incriminating evidence had been found in the general search, or if he had attempted to flee or dispose of incriminating evidence, for there would be, at that point, probable cause to make an arrest. *State v. Ramsey,* 5 Wn. App. 361, 486 P.2d 1109 (1971). Also, as the officers had a valid search warrant to be inside the premises, they undoubtedly could seize objects in plain view, on defendant's person. *See State v. Cagle,* 5 Wn. App. 644, 490 P.2d 123 (1971); *see also, State v. LaPierre,* 71 Wn.2d 385, 428 P.2d 579 (1967). However, as these circumstances did not exist, and as no individual was named or described in the premises search warrant, it is our conclusion that the trial court erred in not granting defendant's motion to suppress the evidence found in the search of his person.

Although it would have been better if defendant had been served personally with a copy of the search warrant pursuant to RCW 69.33.430, it was not reversible error to place the warrant in defendant's property box, as he re-

ceived the warrant the next day, upon his release from jail on bail.

Reversed.

PETRIE, C.J., and ARMSTRONG, J., concur.