STATE OF HAWAII, Plaintiff-Appellee, *v.* SANDRA NABARRO, Defendant-Appellant.

NO. 5526

JULY 23, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI, OGATA and MENOR, JJ.

OPINION OF THE COURT BY LEVINSON, J.

This court held, in *State v. Davenport,* 55 Haw. 90, 100, 516 P.2d 65, 72 (1973), that a lawfully issued warrant to search premises extends to the officers executing it the "authority to search, in a reasonable manner, whatever spots within the described premises their professional experience indicates may be used as a cache" for the items named in the warrant. The time has come for us to decide whether this general principle sanctions a search, pursuant to the execution of a lawful warrant to search premises only, of an individual or his belongings, when the only connection of the individual to the premises is his presence there at the time of the search. We hold that on the facts of this case it does not.

The parties to this appeal are in substantial agreement as to the facts. During the morning hours of June 1, 1973, Lowell Kuramoto and Randall Kaupu vacated room 222 of the TraveLodge Hotel, located in Hilo on the island of Hawaii,

and moved to room 226 of the same hotel. Presumably acting on information from hotel personnel, the police searched room 222 shortly after Kuramoto and Kaupu left it. At various locations in the room they found three marijuana roaches, a roach clip, or "crutch," and a single red capsule. Based on the fruits of this search, on the same day the police secured and executed a warrant to search room 226 for marijuana. At approximately 2:40 P.M., the three officers executing the warrant were admitted to the room by Debrah Mae Kepoo — one of three women, including the defendant-appellant Sandra Nabarro, who were present in room 226 with Kuramoto and Kaupu at that time. When the police entered the room, Miss Nabarro's purse was on the floor in the immediate vicinity of her person. Shortly thereafter, she picked it up and began walking to the bathroom; she was stopped at the door of the bathroom, however, and was told to surrender her purse to one of the officers. He emptied it on a counter, and, in the course of probing its contents, found one marijuana cigarette, an empty plastic bag containing marijuana residue, a cigarette paper, and a roach clip, or "crutch."

On the basis of this evidence, Miss Nabarro was convicted in district court of Promoting a Detrimental Drug in the Third Degree, HRS § 712-1249, Hawaii Penal Code § 1249, L. 1972, ch. 9, § 1249, and was sentenced to probation for one year. In her appeal to this court, she argues an absence of probable cause to support the warrant as well as the unreasonableness of the police searching her purse in their execution of the warrant. Since we find that the search of her purse was unreasonable even assuming that the warrant was properly issued, however, we need treat only her second assignment of error in this opinion. Compare *State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1974).

We are met in this case with legal principles which, at least on their faces, seem to conflict. The first, already noted in citing *State v. Davenport, supra,* is that the searching authority conferred by a valid warrant to search premises extends to all objects within the premises likely to contain the things named in the warrant. The second is that an individual is constitutionally entitled to know that wherever he may be

"he will remain free from unreasonable searches," *Katz v. United States*, 389 U.S. 347, 359 (1967), and in particular that the fortuity of his presence at a place named in a search warrant alone will not cause him to forfeit his right to personal privacy. *United States v. Di Re*, 332 U.S. 581, 587 (1948). From the dynamics of the conflict between these principles has emerged the "general rule . . . that a warrant for premises only will not authorize a search of persons found thereon." E. Mascolo, *Specificity Requirements for Warrants under the Fourth Amendment: Defining the Zone of Privacy*, 73 DICK. L. REV. 1, 19 (1968), and cases cited therein. Yet in an area as volatile and as dependent on specific factual circumstances as the law of search and seizure, "general rules" can only provide an analytic starting point.

Almost all courts having occasion to construe the constitutional requirement that a warrant "particularly describ[e] the place to be searched, and the persons or things to be seized," U.S. CONST. amend. IV; *see* HAWAII CONST. art. I, § 5, have held that a lawful warrant to search premises only does not by its own force permit a search of the persons — residents or visitors — who chance to be there at the time the warrant is executed. *But see Brown v. State*, 498 S.W.2d 343 (Tex. Crim. App. 1973). On the other hand, this court and most others have held that the possessions of a resident of the premises described in a search warrant, if they are "plausible repositories" for searched-for items, can be searched under authority of the warrant. *State v. Davenport, supra* at 100, 516 P.2d at 72. This is on the theory that a particular description in a warrant of a "place" to be searched necessarily includes those belongings which the person with control over the place keeps there, and which are capable of holding the "things" named in the warrant. *See United States v. Micheli*, 487 F.2d 429 (1st Cir. 1973).

However, there is substantial disagreement on whether a warrant to search premises only also sanctions a search of the possessions of non-residents of the premises present there at the time of the search. For example, the court in *United States v. Johnson*, 475 F.2d 977, 978 (D.C. Cir. 1973), framing the question before it to be "whether the scope of the search

warrant embraced an object in the apparent possession of a person not an occupant of the premises searched,'' held that a purse, located on a coffee table directly in front of a woman visiting an apartment named in a warrant to search for drugs, was subject to search by officers executing the warrant. The court relied heavily on the reasoning of *United States v. Teller*, 397 F.2d 494 (7th Cir.), *cert. denied*, 393 U.S. 937 (1968), which suggested that the purse of a woman visiting a place at the time the place was to be searched under a valid warrant retained the woman's personal immunity from search only to the extent that it was being "worn" by the woman — *i.e.*, in her actual physical possession. *Accord, United States v. Riccitelli*, 259 F. Supp. 665 (D. Conn. 1966).

By contrast, the Colorado Supreme Court held in *People v. Lujan*, 174 Colo. 554, 560, 484 P.2d 1238, 1242 (1971) that, "[a]s personal property of a guest on the premises, [a] purse was not subject to search under the search warrant,'' where the facts suggested that the guest did not have physical possession of the purse at the time the warrant was executed. Similarly, the Pennsylvania Supreme Court refused, in *Commonwealth v. Platou*,___Pa.___, 312 A.2d 29 (1973), to uphold a search of the suitcases of a visitor to an apartment under search by warrant even though the suitcases were not in the possession of the visitor at the time of police entry or search. The court, emphasizing the fact that the police had notice of the ownership of the suitcases prior to the search, reasoned cogently as follows:

> A person does not lose the protection of the Fourth Amendment by entering the apartment of another. Neither do a person's effects. The Fourth Amendment permits no lesser protection for a person's effects, than for his person. So long as a person seeks to preserve his effects as private, even if they are accessible to the public or to others, they are constitutionally protected. Stated differently, a person must maintain the privacy of his possessions in such a fashion that his "expectations of freedom from intrusion are recognized as reasonable.''
>
> Personal belongings brought by their owner on a visit to a friend's house retain their constitutional protection

until their owner meaningfully abdicates control or responsibility. Appellant's placing his suitcases on the floor of Wander's apartment and opening one of them does not amount to an abandonment of his control. Appellant maintained his reasonable expectation of privacy. And therefore the search of his suitcases was unreasonable and constitutionally impermissible.

*Id.* at___, 312 A.2d at 34 (citations omitted). *Accord, United States v. Micheli, supra; United States v. Johnson, supra* at 980 (Bazelon, C.J., concurring in part and dissenting in part); *Commonwealth v. Snow,___ Mass.___,___,* 298 N.E.2d 804, 812 (1973) (Kaplan, J., dissenting).

We agree with the *Platou* court's resolution of the issue. An analysis which focuses entirely on whether a belonging is in the physical possession of a non-resident visitor to premises searchable under a warrant, while it serves to protect the zone of privacy around the visitor's person, ignores the substantial interest the visitor has in the privacy of all his possessions, wherever located. To overcome that interest, the federal and state constitutions require a warrant supported by probable cause. And a warrant to search premises only cannot logically meet this requirement since by hypothesis there is no way to know, at the time the warrant is issued, whether the visitor or his possessions will even be present at the premises when the warrant is executed, let alone whether his possessions are likely to contain the items listed in the warrant. Of course, the rule is otherwise when the warrant is used as a basis to search the belongings of a resident of the suspect locale, as we held in *State v. Davenport, supra,* for the resident's control over the premises provides a nexus between them and his belongings which is absent in connection with the possessions of a non-resident visitor. *United States v. Micheli, supra; see Walker v. United States,* 327 F.2d 597 (D.C. Cir. 1963), *cert. denied,* 377 U.S. 956 (1964).

On the other hand, the police cannot realistically be expected to avoid searching the property of a mere visitor to the premises unless they are aware of its ownership. Absent a requirement of such awareness, the effective execution of a

warrant to search a place would be impossible since the police could never be sure that a plausible repository for items named in the warrant belongs to a resident, and hence is searchable, or to a non-resident, and hence is not searchable. Because of this, without notice of some sort of the ownership of a belonging, the police are entitled to assume that all objects within premises lawfully subject to search under a warrant are part of those premises for the purpose of executing the warrant. The *Platou* court suggested as much when it emphasized the fact that the visitor to the premises searched in that case had claimed ownership of the suitcases prior to their being searched. *See also United States v. Riccitelli, supra* at 666 ("The defendant did not have physical possession of the purse, she was not coerced into surrendering it, *and she did not declare her ownership until after the search was completed"*) (emphasis added).

In this case, there was no question that the police had notice, prior to the search, that Miss Nabarro — indisputably a non-resident visitor to the premises — was the owner of the purse. The warrant named two *men* as the occupants of the room to be searched, making it likely that any purses, which are characteristically female attire, found in the room belonged to non-residents. Moreover, when the police entered the room, the purse was in Miss Nabarro's "immediate vicinity." Finally, by picking up the purse in circumstances that made it highly unlikely that the purse belonged to anyone else, Miss Nabarro claimed its ownership and gave clear notice to the police that it was her personal possession. Given these circumstances, the purse was beyond the allowable scope of the warrant to search the room.

We are not persuaded by the State's argument that Miss Nabarro's conduct after the police entered room 226 divested her of any protection against a search of her purse to which she was otherwise entitled. Naturally, Miss Nabarro's mere presence in a hotel room which allegedly contained marijuana was not an abdication of her right to privacy in her person and effects. *Cf. Sibron v. New York*, 392 U.S. 40 (1968) (suspect's observed association with known narcotic addicts constitutes neither probable cause to arrest nor reasonable suspicion to

stop and frisk). Neither was her attempt to go to the bathroom. It is true that to avoid discovery in an imminent search, illicit drugs are often disposed of by method of flushing them down a toilet. However, if it is accepted that Miss Nabarro and her purse were immune from search under the warrant on the theory that there was no rational connection between Miss Nabarro's presence in the room and the allegation that marijuana was kept there by residents of the room, then a fortiori no added danger of destruction of contraband could have been posed by Miss Nabarro's desire to take herself and her purse — both by definition not otherwise subject to search — into the bathroom. *Cf. State v. Wise*, 284 A.2d 292 (Del. Super. Ct. 1971).

We do not mean to suggest that under no circumstances can the police search a non-resident visitor or his belongings in the course of executing a warrant for premises only. We hold only that the *warrant itself* cannot alone provide the basis for such a search. For example, if the police, while executing a warrant to search premises, obtain probable cause to believe that a visitor present on the premises is committing an offense, such as the illegal possession of drugs, they may arrest that visitor and conduct a proper search incident to arrest of his person and the belongings in his possession. *See United States v. Peep*, 490 F.2d 903 (8th Cir. 1974); *People v. Smith*, 21 N.Y.2d 698, 234 N.E.2d 460, 287 N.Y.S.2d 425 (1967)*(per curiam)*. Similarly, if in the course of executing a warrant to search premises the police observe a searched-for item in "plain view" on the person or possessions of a visitor to the premises, they may seize it as part of their general authority under the warrant. *See City of Tacoma v. Mundell*, 6 Wash. App. 673, 677, 495 P.2d 682, 685 (1972) (dicta). It is obvious, however, that neither of these situations pertained to the search of Miss Nabarro's purse in this case. In our opinion that search, supported as it was only by the warrant to search the hotel room in which Miss Nabarro happened to be at the time the police entered, was unreasonable under both the federal and state constitutions.

Reversed.

*John M. A. Burgess*, Deputy Public Defender, for

590

defendant-appellant.

*Andrew P. Wilson,* Deputy Prosecuting Attorney *(Paul M. De Silva,* Prosecuting Attorney, County of Hawaii, of counsel) for plaintiff-appellee.

DISSENTING OPINION OF RICHARDSON, C.J., WITH WHOM OGATA, J., JOINS

I dissent.

I would affirm the denial of defendant-appellant's motion to suppress the evidence seized from her purse. The issue raised by this appeal is the validity of a search, in the execution of a warrant to search premises for marijuana, of a purse belonging to a visitor, which was seized from her after she picked it up off the floor, stood up, and started to walk to the bathroom.

To determine whether the search in this case was unreasonable, the protection of individual privacy guaranteed by the Fourth Amendment must be balanced against the public interest in effective law enforcement of narcotics violations. *United States v. Johnson,* 475 F.2d 977, 978 (D.C. Cir. 1973). I would uphold this search on two grounds: First I consider the search of the purse to be valid as a search of the premises, not of defendant's person, and second, I believe the police acted reasonably in this case to prevent the destruction of contraband.

As to the first ground, it is a generally accepted principle that the police may not search the person of either residents or visitors who are present during the execution of a warrant to search premises only. *See United States v. Di Re,* 332 U.S. 581 (1948); *but see Brown v. State,* 498 S.W.2d 343 (Tex. Crim. App. 1973). Other jurisdictions have held that a search of personal effects such as a briefcase, bag or purse which are not within the physical possession of an individual is not a search of the person and therefore is permissible. *United States v. Teller,* 397 F.2d 494 (7th Cir.), *cert. denied,* 393 U.S. 937 (1968); *United States v. Riccitelli,* 259 F. Supp. 665 (D. Conn. 1966); *United States v. Johnson, supra; see United States v. Micheli,* 487 F.2d 429 (1st Cir. 1973) (concurring

opinion of Campbell, J.).

Hence, I would hold that the search of the defendant's purse in this case was not one of her person and therefore permissible under the warrant for the premises. Although she subsequently picked the purse up when the police entered the premises, the purse was not being "worn" on her person, but resting separately from her on the floor "in the immediate vicinity of her person." I believe that to consider the purse an extension of her person under the circumstances "would be to suggest that a warrant to search premises may be frustrated by the device of simply picking up the guilty object and holding it in one's hand." *Walker v. United States*, 327 F.2d 597, 600 (D.C. Cir. 1963), *cert. denied*, 377 U.S. 956 (1964).

In *United States v. Teller, supra*, the defendant had entered the premises and placed her purse upon a bed while the police were conducting the search. The Court of Appeals upheld the search on the grounds that:

> Defendant's purse lying on the bed was merely another household item subject to the lawful execution of the search warrant which the federal agents held and were enforcing. (Citation omitted). *Id.* at 497.

The court distinguished between the "wearing" of a purse, *i.e.*, when a woman is *carrying* a purse in harmony with her clothing, from a situation in which a purse is not in the physical possession of its owner, and consequently cannot be viewed as an "extension of her person."

In *United States v. Riccitelli, supra*, the police entered the premises in execution of the warrant and observed two women sitting at a table. A purse was in the center of the table between them. The court reasoned that because the defendant did not have physical possession of her purse at the time of the police's search, it was subject to seizure under the authority of the warrant for the premises notwithstanding her status as a visitor:

> The pocketbook in plain view on the table was an obvious receptacle which reasonably should have been inspected to determine whether it contained property described in the warrant for seizure. (Citations omitted). *Id.* at 666.

A search of a briefcase which was found on premises designated in the search warrant was permitted in *United States v. Micheli, supra*. During the search, the agents discovered the appellant's briefcase on the floor under a desk. The majority's rationale in allowing the search was that the appellant was not a mere visitor, but a co-owner of the premises named in the warrant. I believe the concurring opinion of Judge Campbell who viewed this ruling as eviscerating the authority conferred by a valid warrant to search premises to be more cogent. He believed that to require the police to search an individual's personal effects only if they knew at the time of the search that a close relationship or nexus between the person and the premises existed would impose an impractical burden on the investigative powers of the police. He stated:

[I] think the cause for issuance of the original warrant allows a search of relevant personal effects not in the possession of their owner as well as of all other relevant objects on the premises. The contraband or incriminating evidence covered by the warrant is as likely to be within briefcases or bags just brought on the premises as within other objects on the premises. *Id.* at 433.

In *United States v. Johnson, supra,* the Court of Appeals for the District of Columbia upheld the validity of a search of a purse which was sitting on a coffee table in front of the defendant. The police, armed with a warrant to search for narcotics on the premises, knocked at the door and announced their identity. Upon hearing a noise within the apartment followed by the sound of a window breaking, they executed a forced entry. The police entered the living room and saw the defendant sitting on a couch with her purse on a coffee table in front of her. They searched the purse which yielded narcotics and arrested her. The issue before the court in *Johnson* was the same as in the instant case:

. . . whether the scope of the search warrant embraced an object in the apparent possession of a person not an occupant of the premises searched. *Id.* at 978.

In finding the search "reasonable" under the Fourth Amendment, the Court reasoned:

[W]e note that the search was of a purse resting separately from the person of its owner. As such, it was not being "worn" by appellee and thus did not constitute an extension of her person so as to make the search one of her *person*. (Citations omitted)

. . . the police could reasonably have believed that items sought and described in the warrant had been concealed in the purse, and, notwithstanding appellee's status as a visitor on the premises, could have searched the purse in pursuit of items for which the warrant issued. (footnotes omitted). *Id.* at 979.

In *Walker v. United States, supra,* the Court of Appeals for the District of Columbia upheld the seizure of a "purse wallet" and paper bag from the person of the defendant in the execution of a warrant to search the premises for narcotics. When the police officer arrived at the premises, he discovered the door open and that he could see the defendants within. After announcing his identity and that he had a search warrant, he saw one defendant pass the wallet and bag to the other defendant. The officer thereupon entered the premises and seized the two items, which were subsequently found to contain narcotics. The court held that under the circumstances, the authority of the warrant embraced the seizure of the wallet and bag. It was not unreasonable to suppose that they were receptacles for heroin. Because the two items would clearly be within the ambit of the warrant had they been on a table or on the floor, they should not be immune from search merely because they were within a defendant's physical possession.

This court recently considered the issue of the protection of an individual from unreasonable governmental intrusion under a search warrant for premises in *State v. Davenport,* 55 Haw. 90, 516 P.2d 65 (1973). There we upheld the search of a wallet and matchbox lying on a dresser top within four feet of the bed on which defendant Davenport, not named in the warrant, but a resident of the premises, had been sleeping at the time of the warrant's execution. In executing the warrant, police rousted Davenport out of bed and herded him along

with other occupants into another room prior to conducting a particularized search of Davenport's bedroom. In sanctioning the search we stated:

> Certainly a matchbox and a wallet, which are plausible repositories for marijuana and which are exposed on the top of a table, are not beyond the scrutiny of police officers executing a warrant which describes "marijuana" as the thing to be seized. *Id.* at 100, 516 P.2d at 72.

I believe that a woman's purse is similar in nature to a man's wallet which we held searchable under the circumstances in *Davenport, supra*. A purse cannot gain the peculiar status of an "extension of the person" per se when it is picked up by its owner as in this case.

Turning to the second ground for upholding this search, we recognized in *Davenport, supra* at 99, 516 P.2d at 71, that because drugs are by their nature easily destroyed or secreted, forced entry by the police onto a premises may be vindicated under certain circumstances. Moreover, due to the mobility of such contraband we held that a warrant "gives the officers executing it authority to search, in a reasonable manner, whatever spots within the described premises their professional experience indicates may be used as a cache." *Id.* at 100, 516 P.2d at 72.

Flushing contraband down the toilet is a convenient means of disposal. Therefore, the police in this situation would have been derelict in their duty had they not acted quickly to ascertain whether evidence was about to be destroyed when the defendant picked up her purse and headed toward the bathroom.