[No. 4790–3–III.   Division Three.   November 30, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. BRUCE N. HUFF, *Appellant.*

---

*Wade E. Gano* and *Thorner, Almon, Kennedy & Gano,*

for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert N. Hackett, Jr., Deputy,* for respondent.

MUNSON, J.—Bruce Huff appeals his conviction of possession of over 40 grams of marijuana in violation of RCW 69.50.401. His appeal centers on the court's denial of his motion to suppress certain evidence. We affirm.

On April 22, 1981, an affidavit for a search warrant was presented to the Yakima County District Court. The affidavit stated: (1) the address and description of the house where the alleged violations were occurring; (2) an informant had given the officer this information within the past 36 hours and had personally observed a quantity of marijuana in the residence; (3) the informant was familiar with the controlled substance, having used it himself; and (4) four reasons why the informant should be considered reliable. Based on this affidavit, a warrant was issued the same day. The warrant also gave the address and description of the residence to be searched and provided:

> [S]earch the premises . . . and all property real or personal situated on said described real property, . . . and to search the person(s) of *John Doe* . . . and to seize . . . Marijuana . . . together with the conveyances, vehicles or vessels in which they are contained, . . .

At the time the police went to the residence to execute the warrant, they did not know the identity of the occupants and Mr. Huff was not at home. Upon entering the house, the police immediately saw some marijuana on the coffee table. In one of the bedrooms, they found personal papers and documents of Bruce Huff, a small amount of marijuana and drug paraphernalia. While the search was in progress, Mr. Huff walked in. He was advised of the search. The police searched him and discovered a tennis ball can he was carrying contained 55.1 grams of marijuana. The police also searched a car registered to Mr. Huff and found 107.8 grams of marijuana in the trunk. Mr. Huff was charged with possession of a controlled substance. His motion to

suppress the evidence seized was denied. He was found guilty of the crime charged.

First, Mr. Huff argues the information regarding the personal observation of the unidentified informant was arguably 60 hours old and therefore stale. We disagree. The test for staleness of information in a search warrant affidavit is common sense. *State v. Worland,* 20 Wn. App. 559, 582 P.2d 539 (1978). Here, even if the information was as Mr. Huff argues, 60 hours old, that would be only 2½ days old. We hold this information was not stale.

Second, Mr. Huff argues the affidavit did not state the amount of marijuana, its location within the residence, or how it was packaged or concealed; therefore, the factual information is unreliable. We disagree. *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969) and *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964), provide a 2–prong test to determine whether an informant's tip establishes probable cause for issuance of a warrant. Under the first "basis of knowledge" prong, facts must be revealed which permit the judicial officer to decide whether the informant had a basis for his allegation a certain person had committed a crime. *State v. Lair,* 95 Wn.2d 706, 709, 630 P.2d 427 (1981); *State v. Partin,* 88 Wn.2d 899, 903, 567 P.2d 1136 (1977). The reliability of the information may be established by showing the informant based his assertions on direct personal observation. *State v. Thompson,* 13 Wn. App. 526, 529, 536 P.2d 683 (1975); *State v. White,* 10 Wn. App. 273, 518 P.2d 245 (1973); *State v. Walcott,* 72 Wn.2d 959, 435 P.2d 994 (1967). Here the affidavit states: "the informant had personally observed a quantity of Marijuana in the above described residence." That is sufficient.

Third, Mr. Huff contends the information given to show the informant was reliable and credible was conclusory and nonspecific. We disagree. Under the second or "veracity" prong of the *Aguilar/Spinelli* test, sufficient facts must be presented for the issuing magistrate to determine either the inherent credibility or reliability of the

informant. *State v. Fisher,* 96 Wn.2d 962, 965, 639 P.2d 743 (1982). While the mere statement an informant is credible is not sufficient, it is almost universally held to be sufficient if information given in the past has led to arrest and conviction. *State v. Fisher, supra* at 965. In *Fisher,* the court stated at page 965:

> Affiant stated that the informant had given him information proven to be true and correct in the past. While this is more than drawing the conclusion that the informant is credible and admittedly less than stating the facts as to why the past information has proven to be "true and correct", it still is a factual statement—not a conclusion of the affiant. We hold in this case that it is enough to enable a neutral magistrate to determine if the informant is credible.

Here, there is much more. The affiant in the affidavit states four reasons why he believes the informant was reliable: (1) The informant had provided information to the Yakima City–County drug unit, which had been verified through personal knowledge and concurring investigations; (2) the informant had not given any information that had proven to be false; (3) previous information supplied by the informant had led to a controlled buy under the affiant's direction and supervision; (4) other information provided by the informant had led to the successful execution of eight search warrants for marijuana. We find no error.

Fourth, Mr. Huff contends the search of his person was improper because the search warrant did not name him, but instead allowed a search of "John Doe". We disagree. In *Tacoma v. Mundell,* 6 Wn. App. 673, 495 P.2d 682 (1972), the search warrant did not mention any individuals either by name or as John Doe. However, during the search of the premises, the defendant's person was searched and some drugs were found in his clothing. The court stated at page 677:

> A specific warrant to search a premises [*sic*] cannot be converted into a general one to search individuals.
> Clearly, *defendant could have been searched incident to a lawful arrest if incriminating evidence had been*

*found in the general search,* or if he had attempted to flee or dispose of incriminating evidence, for there would be, at that point, probable cause to make an arrest.

(Citations omitted. Italics ours.) The instant case is distinguishable from *Tacoma v. Mundell, supra,* because the warrant did mention an individual, John Doe, and incriminating evidence was discovered in the general search of the premises. The holding of *Tacoma v. Mundell, supra,* is compatible with that of *Michigan v. Summers,* 452 U.S. 692, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981), which dealt mainly with the issue of detention of an individual while a search of his home is made pursuant to a warrant. The Court held in 452 U.S. at 704–05:

If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.

*Because it was lawful to require respondent to re-enter and to remain in the house until evidence establishing probable cause to arrest him was found, his arrest and the search incident thereto were constitutionally permissible.*

(Footnotes omitted. Italics ours.) Here, not only did the warrant specifically allow a search of persons at the residence, incriminating evidence was discovered in the general search of the premises, thus giving the officers the right to search Mr. Huff incident to his lawful arrest.

Fifth, Mr. Huff contends a search of his automobile was not authorized by the warrant and furthermore no exception to the warrant requirement applied. Therefore, the evidence seized must be suppressed. We disagree. The warrant states: "search the premises of aforesaid, and all the buildings and outbuildings thereon, and all property real or personal situated on said described property, . . ." An

automobile is usually considered personal property.

However, assuming arguendo the warrant did not authorize a search of Mr. Huff's automobile, a warrantless search of an automobile is constitutionally permissible if there is probable cause to search the automobile which is stopped, the car is movable, the occupants are alerted, and contents of the car may never be found again if a warrant must be obtained first. *State v. Marcum,* 24 Wn. App. 441, 601 P.2d 975 (1979). Here, exigent circumstances existed. Mr. Huff had been arrested and would be taken to the police station while the other occupants of the residence could, having been alerted, remove any contraband from the automobile before the police obtained a warrant to search it.

Affirmed.

McINTURFF, C.J., and ROE, J., concur.

Reconsideration denied January 7, 1983.