Victoria A. WATERS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5881.

Court of Appeals of Alaska.

Oct. 4, 1996.

---

Marcia E. Holland, Assistant Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for Appellant.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

OPINION

BRYNER, Chief Judge.

Victoria A. Waters entered a plea of no contest to one count of third-degree misconduct involving a controlled substance. AS 11.71.030(a)(1) (possession of cocaine with intent to deliver). In entering the plea, Waters reserved the right to appeal[1] Superior Court Judge Ralph R. Beistline's denial of her motion to suppress evidence seized from her purse by officers executing a search warrant at a residence that Waters was visiting. We affirm.

On August 25, 1994, state and federal officers conducting a joint investigation into illicit drug trafficking executed a warrant authorizing them to search the persons of David and Theresa Edwards, the Edwardses' Fairbanks apartment, and their automobile. Upon arrival at the apartment, the officers knocked and were admitted by Mrs. Edwards. Waters, who was visiting the apartment, was seated on the living room couch. The two women were immediately ordered to lie down on the living room floor; shortly thereafter, they were allowed to sit on a love seat. A cursory search of both women was conducted; both cooperated in providing the officers with identification. Edwards' identification was located in a purse in her bedroom; Waters' was in a checkbook-type purse in a shopping bag on the living room coffee table.

After Edwards and Waters were identified, Fairbanks Police Investigator Parry Williamson embarked on a search of the living room. On the couch, toward the opposite end from where Waters had been sitting when the officers first entered the apartment, Williamson found a small coin purse. He opened it and saw several tinfoil slips, which he recognized as a type of packaging commonly used to wrap crack cocaine. As Williamson emptied the coin purse onto the couch, Waters said that the purse was hers. The purse contained twenty-two slips; each had crack cocaine inside.

Waters was charged with possession of cocaine with intent to deliver. She moved to suppress the cocaine seized from her purse, arguing that "the officer was on notice that

---

**1.** *See Cooksey v. State,* 524 P.2d 1251 (Alaska 1974).

the [coin purse] belonged to Ms. Waters and he should have at least obtained her permission prior to searching it." Following an evidentiary hearing, Judge Beistline denied the motion. Based on the Alaska Supreme Court's ruling in *Carman v. State*, 602 P.2d 1255 (Alaska 1979), and this court's subsequent decisions interpreting *Carman*,[2] Judge Beistline concluded that Waters forfeited her right to privacy in the coin purse by failing to assert her ownership of it prior to the search.

.On appeal, Waters challenges this ruling, arguing that Judge Beistline misconstrued the case law when he ruled that *Carman* required Waters to claim ownership of her coin purse prior to its search. Waters urges us to hold that the police were forbidden from searching any article of personal property that they knew or reasonably should have known belonged to someone who was a mere visitor in the apartment.

The rule advocated by Waters is endorsed by LaFave and has been accepted in many, but not all, jurisdictions.[3] However, even if we assume Waters to be correct in arguing that this rule should apply in Alaska, her argument for suppression fails on the facts of her case.

■ The rule Waters proposes is founded on two potentially conflicting rules. A warrant authorizing the police to search specified premises ordinarily encompasses the opening and inspection of any containers on the premises where the object of the warrant may be hidden. *United States v. Ross*, 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982). This general rule, however, is limited by a second rule, which prohibits the police from searching visitors who merely happen to be at the searched premises during the execution of the warrant. *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979). In cases of uncertainty, the tension between these principles is resolved in favor of executing the warrant. As noted by LaFave, "[the] limitation on the police authority to execute the warrant by searching into personal effects [of visitors] comes into play only if the police 'knew or should have known' that the effects belonged to a 'mere visitor.'" LaFave, *supra* § 4.10(b), at 664.

■ As this passage from LaFave makes clear, the *Ybarra* limitation is triggered, not by suspicion, but by knowledge. It is well settled that officers executing a warrant have no duty to inquire into ownership. *Carman v. State*, 602 P.2d 1255, 1262 (Alaska 1979).[4] "[W]ithout notice of some sort of ownership of a belonging, the police are entitled to assume that all objects within the premises lawfully subject to search under a warrant are a part of those premises for the purpose of executing the warrant[.]" *State v. Nabarro*, 55 Haw. 583, 525 P.2d 573, 577 (1974).

Waters' proposed rule prohibits searching personal effects only when officers executing a warrant actually know, or when existing circumstances would lead a reasonable officer to actually know, that an article belongs to a mere visitor. A mere showing of grounds for suspicion—even a showing of grounds for strong suspicion or of probable cause to question ownership—will not suffice.[5]

2. See *Ingram v. State*, 703 P.2d 415, 425–26 n. 7 (Alaska App.1985); *Kralick v. State*, 647 P.2d 1120, 1125–26 (Alaska App.1982).

3. See *generally* 2 Wayne R. LaFave, Search & Seizure § 4.10(b) (1996). *Compare United States v. Young*, 909 F.2d 442, 444–45 (11th Cir.1990), *United States v. Branch*, 545 F.2d 177, 181–82 (D.C.Cir.1976), *United States v. Micheli*, 487 F.2d 429, 431 (1st Cir.1973), *United States v. Neet*, 504 F.Supp. 1220, 1227–29 (D.Colo.1981), *State v. Thomas*, 818 S.W.2d 350, 359 (Tenn.App.1991), *People v. McCabe*, 144 Cal.App.3d 827, 192 Cal. Rptr. 635, 636–37 (1983), and *State v. Nabarro*, 55 Haw. 583, 525 P.2d 573, 576–77 (1974) *with Commonwealth v. Reese*, 520 Pa. 29, 549 A.2d 909, 911 (1988).

4. As explained in *Commonwealth v. Reese*, 520 Pa. 29, 549 A.2d 909, 911 (1988), requiring inquiry into ownership of personal effects is both impractical and unrealistic when a search warrant is being executed: "It would not be reasonable to require police officers executing a warrant to ask individuals located on the premises whether they own various items of personal property[,] nor ... would it be reasonable to expect an appropriate response were they required to do so."

5. Under Alaska's revised criminal code, for example, when knowledge of a particular fact is an element of an offense, the state must prove, at a minimum, that the defendant was aware of "a *substantial* probability" of the fact's existence. AS 11.81.900(a)(2) (emphasis added).

In the present case, the record is devoid of any evidence indicating that any officer executing the warrant ever saw Waters in possession of the disputed coin purse. To the contrary, Judge Beistline expressly found that Waters "intentionally tried to dissociate herself from the purse." This factual finding is not clearly erroneous. The coin purse was found on the couch where Waters had been sitting, but "toward the other end." By the time the coin purse was found, Waters had already directed officers to a wallet, in a different location, that contained her identification. Waters made no claim to the coin purse until after it was opened.[6] The premises being searched were occupied by another woman, Theresa Edwards, and the search warrant expressly authorized officers to search Edwards' person and her personal effects.

Although the coin purse's location on the couch near the place where Waters was sitting when officers first entered the apartment certainly could have raised a reasonable suspicion that the purse might be hers, the totality of the circumstances fails to bridge the gap between suspicion and actual knowledge: the record as a whole contains insufficient evidence to support the conclusion that the officers actually knew the purse

belonged to Waters or that they reasonably should have known she owned it.[7]

In summary, the warrant in this case authorized officers to open and search all containers in the Edwardses' apartment that might have contained drugs. We assume for purposes of this decision that articles of personal property belonging to a mere visitor were exempt from the scope of the warrant, even without an express claim of ownership by the visitor, if the officers knew or reasonably should have known that those articles did not belong on the premises. Yet the officers had no duty to resolve ambiguity concerning ownership. Waters' coin purse was a plausible hiding place for contraband and was found in the Edwardses' apartment; absent circumstances providing clear notice that the purse actually belonged to Waters, and not just that it might have, the officers acted properly in searching it.

The superior court did not err in denying Waters' motion to suppress. Accordingly, we AFFIRM Waters' conviction.

---

**6.** Waters has argued that the intimidating conduct of officers conducting the search chilled her assertion of ownership in the coin purse. However, Judge Beistline rejected this claim below, finding that at the outset of the search Waters consciously attempted to distance herself from the coin purse. Waters' testimony did not establish that her failure to claim ownership of the purse before it was opened resulted from intimidation. Judge Beistline's finding is not clearly erroneous.

**7.** Accepting Waters' argument that *Carman* should be limited to its precise facts and does not

stand for a general rule that a pre-search assertion of ownership is required, the supreme court's conclusion that officers conducting the search of Carman's apartment did not have notice that Carman's sister owned the purse is nonetheless instructive here, since the overall circumstances of Waters' case seem far less indicative of her ownership of the coin purse than the circumstances in *Carman* were of Carman's sister's ownership of the purse found in Carman's apartment.